**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-00210-MJW

LIST INTERACTIVE, LTD. D/B/A UKNIGHT INTERACTIVE,
LEONARD S. LABRIOLA,

    Plaintiffs,

v.

KNIGHTS OF COLUMBUS,
THOMAS P. SMITH, JR.,
MATTHEW A. ST. JOHN,

  Defendants.

---

**DEFENDANTS MATTHEW ST. JOHN AND THOMAS SMITH'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
PURSUANT TO FED. R. CIV. P. 12(b)(2)**

---

Defendants Matthew A. St. John and Thomas P. Smith, Jr., through Lewis Roca Rothgerber Christie LLP and pursuant to Fed. R. Civ. P. 12(b)(2), move to dismiss all claims against them for lack of personal jurisdiction.

**I.   INTRODUCTION**

Messrs. St. John and Smith are officers of Defendant Knights of Columbus (the "Order"). (*See* First Amended Complaint [Doc. No. 15] ("Am. Compl.") ¶¶ 6-7.) Messrs. St. John and Smith both reside in Connecticut, where the Order is also headquartered. (*Id.* ¶¶ 5-7.)

A nonresident defendant is subject to personal jurisdiction in Colorado only if he has the requisite "minimum contacts" with this state to satisfy the requirements of the Due Process Clause. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir.

2008) (Gorsuch, J.) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). The Order concedes that, as an entity, it is subject to *general* personal jurisdiction in Colorado based on its continuous and systematic business activities in the state. But this Court lacks personal jurisdiction over the two individual defendants. Messrs. St. John and Smith are not subject to this Court's general jurisdiction because they do not carry on continuous and systematic business activities in Colorado. And neither is subject to the Court's specific jurisdiction because, even taking as true the well-pleaded allegations in the First Amended Complaint, Messrs. St. John and Smith did not purposefully direct or expressly aim any of their alleged activities at Colorado.

## II.    LEGAL STANDARD

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014). "While service of process and personal jurisdiction both must be satisfied before a suit can proceed, they are distinct concepts that require separate inquiries." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). Under the second, due-process prong of the analysis, "defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe*, 326 U.S. at 316).[1]

---

[1] With respect to the individual defendants, Plaintiffs have asserted two state law claims – misappropriation of trade secrets (against Mr. St. John) and defamation (against Mr. Smith) – and a federal RICO claim (against both). The state law claims are subject to Colorado's long-arm

Plaintiffs bear the burden of establishing this Court's personal jurisdiction over Messrs. St. John and Smith. *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004). At the motion-to-dismiss stage, and absent an evidentiary hearing, Plaintiffs must "make a *prima facie* showing of personal jurisdiction." *Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1048 (D. Colo. 2012). The Court accepts Plaintiffs' allegations as true only to the extent they are both "well-pled (that is, plausible, non-conclusory, and non-speculative)," *Dudnikov*, 514 F.3d at 1070, and "uncontroverted by the defendant's affidavits," *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Conclusory allegations are not accepted as true. *Great Divide Brewing Co. v. Gold Key/PHR Food Servs., LLC*, 127 F. Supp. 3d 1137, 1142 (D. Colo. 2015). Plaintiffs must allege "specific acts connecting [the] defendant with the forum." *Clay v. Blue Hackle N. Am., LLC*, 907 F. Supp. 2d 85, 87 (D.D.C. 2012) (alteration in original, quotation omitted).

In resolving a motion to dismiss for lack of personal jurisdiction, the Court may consider affidavits and other written materials submitted by the parties without converting the motion into

---

statute, which "confers the maximum jurisdiction permissible consistent with the Due Process Clause," effectively collapsing "the first, statutory, inquiry . . . into the second, constitutional, analysis." *Dudnikov*, 514 F.3d at 1070. Service of process under RICO is governed by 18 U.S.C. § 1965, which authorizes nationwide service if "personal jurisdiction can be established over at least one defendant" and nationwide service on other defendants is "required by the ends of justice." *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006). In this case, the "ends of justice" do not require nationwide service, and the First Amended Complaint contains no allegations to the contrary. Presumably, Plaintiffs will maintain that serving process from Colorado on Connecticut-resident defendants was required because Plaintiffs allegedly sustained damages and incurred litigation costs in Colorado. But the Tenth Circuit has plainly held that "such facts, standing alone, do not satisfy the 'ends of justice' standard." *Id.* And where that standard is unsatisfied, this Court "need not proceed to the Fifth-Amendment inquiry." *Id.* at 1233; *see also Goodwin v. Bruggeman-Hatch*, 2014 WL 3882183, at *7 (D. Colo. 2014) ("Having found that § 1965(b) does not authorize nationwide personal jurisdiction in this case, the Court need not consider whether Fifth Amendment due process would be satisfied.").

one for summary judgment. *See Impact Prods.*, 341 F. Supp. at 1189; *Topliff v. Atlas Air, Inc.*, 60 F. Supp. 2d 1175, 1176-77 (D. Kan. 1999). Factual disputes in the parties' papers must be resolved in favor of Plaintiffs. *Dudnikov*, 514 F.3d at 1070.

The Tenth Circuit has repeatedly emphasized that "[j]urisdiction over a corporation in a particular forum does not automatically confer jurisdiction over that corporation's employees." *Newsome v. Gallacher*, 722 F.3d 1257, 1275 (10th Cir. 2013). Contacts by employees with the forum state "are *not* to be judged according to their employer's activities there." *Id.* (emphasis added) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)) (internal quotation marks omitted). Rather, "[e]ach defendant's contacts with the forum State must be assessed individually." *Id.* (quoting *Calder*, 465 U.S. at 790) (internal quotation marks omitted). "[J]urisdiction over the individual officers and directors must be based on their *individual contacts* with the forum state." *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987) (emphasis added); *see also Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 n.3 (10th Cir. 1988) (contacts of multiple parties cannot be aggregated to reach the personal jurisdiction standard and "due process requirements for personal jurisdiction must be met as to each individual Defendant").

### III.  THE COURT LACKS PERSONAL JURISDICTION OVER MR. ST. JOHN.

Due process for jurisdictional purposes is a two-part inquiry. First, does the defendant have sufficient "minimum contacts" with the forum state? *Dudnikov*, 514 F.3d at 1070. Second, if such minimum contacts exist, is the exercise of jurisdiction "'reasonable' in light of the circumstances surrounding the case"? *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

"Minimum contacts" is analyzed in terms of specific jurisdiction or general jurisdiction. *See id.* Specific jurisdiction exists when the defendant's contacts with the forum state arise from, or are directly related to, the plaintiff's cause of action. *Id.* General jurisdiction is proper when the defendant has other "continuous and systematic general business contacts" with the forum, even if those contacts are unrelated to the pending litigation. *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)) (internal quotation marks omitted). This Court has neither general nor specific jurisdiction over Mr. St. John.

### A. Mr. St. John does not have continuous and systematic general business contacts with Colorado.

Mr. St. John is a resident of Connecticut. (Am. Compl. ¶ 7). He is the Director of Insurance Marketing for the Order, whose principal place of business is in Connecticut. (*Id.* ¶¶ 5, 7). Mr. St. John owns no property in Colorado, and conducts no personal business here. (Exhibit 1, St. John Aff. ¶ 5.) He has traveled to Colorado only once, when he attended a Catholic media conference in Denver in 2012 or 2013. (*Id.* ¶ 6.) This was a business trip for the Order, not a personal trip. *Id.* In his capacity as Director of Insurance Marketing, Mr. St. John communicates monthly via email and telephone with the Order's insurance agents, who are located across the United States and Canada. (*Id.* ¶ 8.)[2] These communications either originate with Mr. St. John or are received by Mr. St. John at his office in Connecticut. (*Id.*) Mr. St. John communicates directly with individual agents in Colorado no more than six times per year. (*Id.* ¶ 9.)

These contacts by Mr. St. John with Colorado are "random, fortuitous, [and] attenuated." *Dudnikov*, 514 F.3d at 1071. They are not the "continuous and systematic general business

---

[2] These agents are independent contractors. *See Birchem v. Knights of Columbus*, 116 F.3d 310, 313 (8th Cir. 1997).

contacts" necessary to support the exercise of general personal jurisdiction. *Helicopteros*, 466 U.S. at 416.

"The threshold of contacts necessary to support general jurisdiction is high." *Schneider v. Cate*, 405 F. Supp. 2d 1254, 1259 (D. Colo. 2005). This Court has rejected general jurisdiction over a nonresident defendant who, among other things, was married in Colorado, owned and "frequently visit[ed]" a second home here, did "extensive business" here prior to retirement, "regularly phone[d] friends in Colorado," and held partial ownership interests in Colorado businesses. *See id.* at 1260. Similarly, the Tenth Circuit has found no general jurisdiction in Colorado over a defendant who owned a joint bank account in Colorado, belonged to the Tenth Circuit Bar, previously lived in Colorado and was a limited partner in a Colorado partnership (prior to the events at issue), owned property in the state, was a member of an advisory board of a Colorado corporation, traveled to Colorado "several times a year," and did a "small amount of business" here. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1543-44 (10th Cir. 1996). If the more extensive contacts in *Schneider* and *Trierweiler* did not justify general jurisdiction, then Mr. St. John's far more isolated contacts with Colorado surely do not either.

Moreover, all of Mr. St. John's contacts with Colorado have occurred in his representative capacity on behalf of the Order, not in his personal capacity. "[A] nonresident corporate agent generally is not individually subject to a court's jurisdiction based on acts undertaken on behalf of the corporation." *Newsome*, 722 F.3d at 1275 (quoting 3A William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Corporations* § 1296.20 (Sept. 2012 update)) (internal quotation marks omitted).

### B.  Mr. St. John is not subject to specific jurisdiction here because none of his alleged claim-related activities was purposefully directed toward or expressly aimed at Colorado.

"In contrast to the single, overarching requirement of continuous and systematic contacts for general jurisdiction, the 'minimum contacts' test for specific jurisdiction encompasses two distinct requirements." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). First, the nonresident defendant must have "purposefully directed" his activities at the forum state, and second, the plaintiff's injuries must "arise out of" defendant's forum-related activities. *Id.*

As the Tenth Circuit has explained, it is not enough simply that the *effects* of a defendant's activities were felt in the forum state. "[P]laintiff's residence in the forum state, and hence suffering harm there, does not alone establish personal jurisdiction . . . ." *Id.* Rather, the "purposeful direction" element requires "(a) an intentional action . . . , that was (b) expressly aimed at the forum state . . . , with (c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1072. Put differently, the forum must be the "focal point" of the alleged wrongdoing. *Id.* (quoting *Calder*, 465 U.S. at 789) (internal quotation marks omitted). Nothing like that is present here. Of the specific acts Mr. St. John is alleged to have engaged in, none is even related to Colorado, much less expressly aimed at this state.

Plaintiff Mr. Labriola is a resident of Colorado. (Am. Compl. ¶ 4). Plaintiff UKnight is registered and headquartered in Colorado. (*Id.* ¶ 3). UKnight is a citizen of both Colorado and Texas because its two other members, Terry Clark and Jonathan Michlik, reside in Texas. (*Id.*). Importantly, *none of the negotiations or discussions between Plaintiffs and Defendants related to this case occurred in Colorado*. Mr. Labriola made several trips to New Haven, Connecticut hoping to persuade the Order to do business with UKnight. (*Id.* ¶¶ 17, 25). On one occasion, the

Order's representatives, including Mr. St. John, traveled to Dallas, Texas for a meeting with Mr. Clark. (*Id.* ¶ 56). Mr. St. John had several conference calls with Messrs. Labriola and Clark, but he participated in these from his office in New Haven. (Ex. 1, St. John Aff. ¶ 10.) Indeed, it appears the only contact between Colorado and this case is the fact that Plaintiffs reside here.

Plaintiffs' RICO and misappropriation claims against Mr. St. John arise out of the following allegations in the First Amended Complaint:

- **¶ 56**: On June 2, 2015, Mr. St. John traveled to Dallas, Texas along with the "the KC Supreme Operations Committee" and Ian Kinkade, whom the Order had retained as a technology consultant. The purpose of the trip was to meet with Mr. Clark. During the meeting, Mr. St. John sent an email to Mr. Kinkade which allegedly "expressly instructed Mr. Kinkade to get the specs for at least two of UKnight's proprietary systems so that Mr. St. John could have another developer build the system for them[.]" *See also* Am. Compl. ¶¶ 74-75.

- **¶ 57**: The "discussions continued." Mr. St. John refused to send UKnight a "scope of work" document to "protect [UKnight's] proprietary information," and he "demanded that UKnight provide him with all of UKnight's strategies, design data, and internal system information – essentially all of UKnight's trade secrets." Mr. St. John "falsely stated" the reason he needed this information. UKnight "declined this request, and instead continued to propose that its technology manager Mr. Clark and director Mr. Labriola fly to New Haven to work collaboratively with Mr. St. John's team to resolve any concerns." *See also* Am. Compl. ¶ 76.

- **¶ 58**: "This proposal was ignored." On January 4, 2016, Mr. St. John sent an email to Messrs. Labriola and Clark, which denied any contractual relationship between the Order and UKnight, stated that the Order would explore other potential website vendors, and instructed UKnight to stop using the Order's trademarks and other intellectual property.

- **¶ 59**: The Order hired Mr. Kinkade as its Director of eBusiness and "sent a Request for Proposal (RFP) to several other potential vendors, which included specific design elements and internal workings of the system UKnight had developed for the Knights of Columbus and that were observed by Mr. Kinkade or disclosed by UKnight."

These allegations form the basis of Plaintiffs' RICO and misappropriation claims against Mr. St. John. (*See in particular id.* ¶¶ 88, 120 (recapitulating and incorporating the above

allegations).) The First Amended Complaint further characterizes the alleged trade secret misappropriation this way (emphases are added):

- **¶ 80**: "Defendants sent Mr. Kinkade to *Dallas, Texas* to steal UKnight's trade secrets, arranged for his travel back to *New Haven, Connecticut*, and subsequently hired him to work for KC Supreme in *New Haven*."

- **¶ 81**: "Defendants additionally transported UKnight's trade secrets across state lines by sending this information to other software developers outside Connecticut as part of their RFP process, and, upon information and belief, sending this information to their new development partner to copy . . . ."

  **¶ 82**: "Finally, by receiving *in Connecticut* this stolen information Mr. Kinkade obtained *in Texas*, Defendants have received stolen wares valued well in excess of $1 million from across state lines . . . ."

The other RICO allegations are vague, conclusory allegations of an "elaborate conspiracy" by all defendants to "artificially inflate" the Order's membership numbers and "artificially improve the demographic structure of this riskpool." (*Id.* ¶ 31; *see also id.* ¶¶ 34, 36, 66-67).

Even taking Plaintiffs' well-pleaded allegations as true, they do not establish – they do not even suggest – that Mr. St. John "purposefully directed" or "expressly aimed" his conduct toward Colorado. *See Dudnikov*, 514 F.3d at 1072. Colorado was not the "focal point" of any of Mr. St. John's activities. *Id.* at 1074. Plaintiffs do not allege that they suffered any harm here. Even if they had, none of the activities purportedly giving rise to that harm was directed at Colorado, and the "mere fortuity" that Plaintiffs reside in Colorado "is insufficient to create personal jurisdiction." *Shell*, 899 F. Supp. 2d at 1053.[3]

---

[3] In this vein, the allegations of an "elaborate conspiracy" to inflate the Order's membership numbers is double defective for jurisdictional purposes. Nothing in the First Amended Complaint suggests that Colorado was the focal point of this purported conspiracy, and Plaintiffs do not allege to have suffered any harm – in Colorado or elsewhere – as a result.

Two Tenth Circuit precedents provide helpful guidance here. In *Far West Capital, Inc. v. Towne*, a Utah company, FWC, brought suit in Utah against Nevada resident Dorothy Towne and her out-of-state company. 46 F.3d 1071, 1075 (10th Cir. 1995). The suit arose out of a contract between FWC and Towne concerning mineral rights to property located in Nevada. *See id.* FWC claimed Towne breached the contract (which was governed by Nevada law) and, in so doing, interfered with FWC's other contractual relationships, which involved FWC's plans to build a Nevada power plant and supply power to a Nevada utility. *See id.* at 1074. The Tenth Circuit rejected each of FWC's claimed bases for personal jurisdiction in Utah. *See id.* at 1075. For example, the court rejected the parties' phone and mail communications as a basis for jurisdiction because these amounted to "ten-to-twenty scattered contacts," *id.* at 1077, and the parties' "most important negotiations" took place in person in Nevada, *id.* at 1080, 1073.

The Tenth Circuit also addressed FWC's argument that Towne had committed business torts "in Utah." *Id.* at 1077. The court analyzed the Supreme Court's decision in *Calder*, in which a California resident brought suit in California against a Florida-based magazine publisher for an allegedly defamatory article. *See Calder*, 465 U.S. at 785. The Supreme Court in *Calder* found the defendant's contacts with California sufficient for jurisdiction because the magazine's largest circulation was in California, the article reported on plaintiff's California activities, and plaintiff's reputation as an entertainer was centered in California. *See id.* at 789-90. The publisher thus "knew that the brunt of th[e] injury" from the article would be felt in California, and its actions were "expressly aimed at California." *Id.* In contrast to *Calder*, the Tenth Circuit found that the "focal point" of the relationship between FWC and Towne was Nevada rather than Utah: "the most important negotiations took place in Nevada," "the enterprise was designed to

use Nevada resources to supply power to a Nevada utility," and the contract was governed by Nevada law. *Far West*, 46 F.3d at 1080. "In short," the Tenth Circuit concluded, "there is no indication that Utah had anything but a fortuitous role in the parties' past dealing or would have any role in their continuing relationship." *Id.*

The Tenth Circuit's decision in *Dudnikov* is a helpful contrast. There, a Connecticut-based defendant sent written notice to eBay in California, which caused eBay to "automatically terminate" the online auction of a Colorado-based eBay seller. 514 F.3d at 1068. The seller, her business, and the product being sold were all located in Colorado, and this fact was clearly disclosed on the eBay auction page. *See id.* at 1076. The Tenth Circuit found personal jurisdiction in Colorado because, even though the defendant sent the notice to California, both the effect and the purpose of the notice were to "suspend plaintiffs' auction in Colorado." *Id.* at 1082. Relying on *Calder*, the court found that defendant's "express aim in acting was to halt a Colorado-based sale by a Colorado resident." *Id.* at 1076.

Unlike in *Dudnikov*, nothing in the First Amended Complaint indicates that Colorado was the focal point of the parties' relationship or of Mr. St. John's alleged activities. To the contrary, Plaintiffs allege that their own business activities were centered in Texas, *see* Am. Compl. ¶ 15; the "high-level" discussions between the parties all took place in Connecticut, *see id.* ¶¶ 17, 25; and the alleged theft of trade secrets occurred in (or between) Texas and Connecticut, *id.* ¶¶ 56-59, 80-82. Moreover, although Plaintiffs allege a contract was formed in this case – an assertion the Order denies and will conclusively refute – the only written agreement between the parties is a nondisclosure agreement *signed by UKnight* promising to keep *the Order's* information confidential and expressly stating that it is governed by *Connecticut* law. (*See* Exhibit 1, Attach.

A.) In short, as the Tenth Circuit concluded in *Far West*, Colorado has nothing but "a fortuitous role" in this case. 46 F.3d at 1080.

### C. Mr. St. John should be dismissed from this case.

Based on the foregoing, Mr. St. John does not have the requisite minimum contacts with Colorado to support this Court's exercise of personal jurisdiction over him. His overall contacts with Colorado are far too isolated, attenuated, and sporadic to justify the assertion of general jurisdiction, and in terms of specific jurisdiction, none of his alleged activities giving rise to Plaintiffs' claims were purposefully directed at this state. Because Mr. St. John lacks minimum contacts with the forum, the Court need not analyze whether the exercise of jurisdiction would be reasonable. Mr. St. John respectfully requests that the Court dismiss him as a defendant in this case.

## IV. THE COURT LACKS PERSONAL JURISDICTION OVER MR. SMITH.

As with Mr. St. John, this Court also lacks both general and specific jurisdiction over Mr. Smith.

### A. Mr. Smith does not have continuous and systematic general business contacts with Colorado.

Mr. Smith is a resident of Connecticut. (Am. Compl. ¶ 6). He is the Executive Vice President and Chief Insurance Officer for the Order, whose principal place of business is in Connecticut. (*Id.* ¶¶ 5-6; Exhibit 2, Smith Aff. ¶ 2.) Mr. Smith owns no property in Colorado, and conducts no personal business here. (*Id.* ¶ 5.)

In his capacity as Executive Vice President and Chief Insurance Officer, Mr. Smith travels across the world on behalf of the Order. (*Id.* ¶ 6.) He does not regularly visit Colorado. The last time he was in the state was in August 2011, when he attended the Order's annual

convention. (*Id.*) In 2007, he attended a meeting in Colorado for the Million Dollar Round Table (an association of financial professionals), and before 2000, he made occasional trips to Colorado for the Order. (*Id.* ¶ 7.) Mr. Smith took all of these trips in his capacity as an employee and representative of the Order. (*Id.*)

Mr. Smith regularly communicates by mail with the Order's members, who are located across the United States and the world. (*Id.* ¶ 8.) These communications either originate with Mr. Smith or are received by Mr. Smith at his office in Connecticut. (*Id.*) Each month, the Order sends out thousands of pieces of insurance-related correspondence to members in the United States and Canada. Some of this correspondence reaches members in Colorado. Mr. Smith does not personally direct or tailor the contents of this correspondence to Colorado residents. These are effectively "form letters" – the official correspondence of the Order, not the personal correspondence of Mr. Smith. (*Id.*)

Like Mr. St. John, Mr. Smith does not have the sort of "continuous and systematic general business contacts" that would support general personal jurisdiction over him in Colorado. *Helicopteros*, 466 U.S. at 416. First, all of his contacts with Colorado have occurred in his representative capacity on behalf of the Order and thus are not a basis for jurisdiction over him personally. *See Newsome*, 722 F.3d at 1275. Second, even if these contacts were in his personal capacity, they still do not surmount the high bar for general jurisdiction. *See supra* Part III.A; *Trierweiler*, 90 F.3d at 1543-44 (even substantial contacts with Colorado "d[id] not rise to the 'continuous and systematic' level necessary to confer general jurisdiction"); *Schneider*, 405 F. Supp. 2d at 1259-60 (same).

**B.    Mr. Smith is not subject to specific jurisdiction here because none of his alleged claim-related activities was purposefully directed toward or expressly aimed at Colorado.**

While Plaintiffs assert a RICO claim and a claim for defamation (slander *per quod*) against Mr. Smith, the First Amended Complaint offers no basis for specific jurisdiction over Mr. Smith in Colorado.

Plaintiffs' defamation claim against Mr. Smith arises out of the following allegations of the First Amended Complaint:

- **¶48**: "[O]n January 24, 2014, in a meeting with the KC Supreme Operations Committee in New Haven, Connecticut, Mr. Smith told the committed [sic] that Mr. Labriola had lied to him and to his agents about money. These statements were false, and Mr. Smith knew them to be false when he made them to the committee." *See also* Am. Compl. ¶ 140-141.

- **¶ 49**: This "defamatory statement" by Mr. Smith "poisoned the atmosphere against UKnight," and Mr. Smith "refuse[d] to allow" the Order to announce UKnights as its "designated vendor." Mr. Smith was "manufacturing reasons to delay the announcement so that [defendants] could replicate UKnight's product themselves and prevent UKnight's system from exposing the extent of their membership number fraud." *See also* Am. Compl. ¶ 143.

- **¶¶ 50-51**: Mr. Smith then "demanded that UKnight agree in writing that Mr. Labriola would never again speak with UKnight's most important customers." "[I]n an effort to maintain their business relationship, UKnight agreed to these demands by corporate resolution."

Plaintiffs' RICO claim against Mr. Smith is confusing and, at times, internally contradictory. Part of the RICO claim appears to arise out of Mr. Smith's alleged defamatory remark to the Operations Committee. *See id.* ¶ 72 (alleging Mr. Smith "sabotaged the announcement of UKnight as designated vendor to permit Defendants to steal [UKnight's] trade secrets"). Other aspects of the RICO claim allege that Mr. Smith was involved in the theft of the trade secrets along with Mr. St. John. *See id.* ¶¶ 72-73, 75. Finally, as with Mr. St. John, the

remaining RICO allegations are vague and conclusory, and do not describe the specific acts Mr. Smith purportedly engaged in as required by Rule 9(b). *See, e.g., id.* ¶¶ 31, 34, 36, 66-67.

Regardless, taking Plaintiffs' well-pleaded allegations as true, they do not establish that Mr. Smith "purposefully directed" or "expressly aimed" his conduct toward Colorado. *See Dudnikov*, 514 F.3d at 1072. To the extent Plaintiffs allege that Mr. Smith was involved in the theft of trade secrets, those allegations do not establish jurisdiction in Colorado for the reasons already explained with respect to Mr. St. John. *See supra* Part III.B. Plaintiffs' allegations about an "elaborate conspiracy" to inflate the Order's membership numbers – even assuming these are well-pleaded with respect to Mr. Smith – have nothing to do with Colorado either in purpose or effect. *See supra* note 3.

Finally, for similar reasons, Plaintiffs' defamation allegations fail to establish personal jurisdiction over Mr. Smith. According to the First Amended Complaint, Mr. Smith made the alleged statement *in Connecticut* to the Order's Operations Committee. (Am. Compl. ¶¶ 48, 140.) There is no suggestion that the statement had anything to do with Colorado or with Plaintiffs' Colorado-based activities. Indeed, Plaintiffs do not even claim to *have* Colorado-based activities. (*Compare id.* ¶ 15 (describing Plaintiffs' business activities in Texas).) Plaintiffs do not allege to have any particular reputation in Colorado or to have suffered any harm in Colorado as a result of the statement, nor do they allege that Mr. Smith "knew that the brunt of th[e] injury" would be felt in this state (if it was felt at all). *Calder*, 465 U.S. at 789-90. The best that Plaintiffs can muster is that Mr. Smith's alleged statement "poisoned the atmosphere" against UKnight (Am. Compl. ¶ 49), but that is a far cry from the requirement that Mr. Smith

"purposefully direct" and "expressly aim" his conduct toward Colorado. *See Dudnikov*, 514 F.3d at 1072.[4]

The Tenth Circuit's decision in *Shrader* is instructive here. In *Shrader*, plaintiff had partnered with Stewart, who edited, published, and sold plaintiff's literary materials. 633 F.3d at 1237-38. When the relationship soured, Stewart sent an email to his customers criticizing plaintiff's work. *Id.* at 1238. Biddinger, one of the email recipients, then posted the email to a public internet forum hosted by Beann. *Id.* Plaintiff sued Stewart, Biddinger, and Beann for defamation and other torts in Oklahoma (plaintiff's state of residence), even though none of the defendants resided there. *Id.* The court found no personal jurisdiction over any defendant because none of defendants' actions was aimed at Oklahoma. Plaintiff's literary work was not linked to Oklahoma in any way, and in fact was marketed and sold worldwide. *Id.* at 1245. Similarly, the email and the internet forum where the email was posted had a wide audience, with no particular tie to Oklahoma, and neither the email nor the internet posting was directly aimed at Oklahoma residents. *See id.* at 1245, 1248.

*Shrader*'s analysis is controlling here. The email and the internet posting in that case were no more directed toward Oklahoma than Mr. Smith's statement in this case was directed toward Colorado. The Due Process Clause requires more, and Plaintiffs have not established the requisite minimum contacts between Mr. Smith and Colorado to justify haling him into court in

---

[4] As is well-established, even if Mr. Smith's statement might have made its way into and caused some effect in Colorado, that would not suffice for jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994) (where allegedly defamatory report concerned Ohio resident's overseas activities and his reputation was not centered in Ohio, "[t]he fact that the [defendant] could foresee that the report would be circulated and have an effect in Ohio is not, in itself, enough to create personal jurisdiction"). But Plaintiffs' First Amended Complaint does not even allege this much.

this forum. *See also Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1052-53 (D. Colo. 2012) (in case of alleged copyright infringement based on defendant's internet publication, finding no personal jurisdiction over defendant because there were "no allegations or evidence which would indicate that [defendant] deliberately directed its message at an audience in Colorado and intended harm to [plaintiff] occurring primarily or particularly in Colorado"; plaintiff failed to show that defendants' websites "specifically targeted a Colorado audience, engaged in commercial or other significant transactions with Colorado residents, or otherwise were connected to Colorado").

### C.  Mr. Smith should be dismissed from this case.

Based on the foregoing, Mr. Smith does not have the requisite minimum contacts with Colorado to support this Court's exercise of personal jurisdiction over him. His overall contacts with Colorado are not sufficiently "continuous and systematic" to justify the assertion of general jurisdiction, and in terms of specific jurisdiction, none of his alleged activities giving rise to Plaintiffs' claims were purposefully directed at this state. Because Mr. Smith lacks minimum contacts with the forum, the Court need not analyze whether the exercise of jurisdiction would be reasonable. Mr. Smith respectfully requests that the Court dismiss him as a defendant in this case.

## V.  CONCLUSION

The Court, pursuant to Fed. R. Civ. P. 12(b)(2), should dismiss this action as to Defendants Matthew St. John and Thomas Smith for lack of personal jurisdiction.

DATED: February 22, 2017.

        Respectfully submitted,

        *s/Edward A. Gleason*
        Edward A. Gleason
        L. Martin Nussbaum
        Hermine Kallman
        Ian Speir
        LEWIS ROCA ROTHGERBER CHRISTIE LLP
        90 South Cascade Avenue, Suite 1100
        Colorado Springs, CO 80903
        Telephone: 719.386.3000
        Facsimile: 719-386-3070
        Email: egleason@lrrc.com

        *Attorneys for Defendants*
        *Matthew A. St. John and Thomas P. Smith, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February, 2017, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF System, which will send notification to the following:

Jeffrey S. Vail, Esq.
VAIL LAW LLC
5299 DTC Blvd., Suite 1101
Greenwood Village, CO  80111

                                                      Arlene K. Martinez
                                                     Arlene K. Martinez