## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00210-LTB

LIST INTERACTIVE, LTD. D/B/A UKNIGHT INTERACTIVE,
LEONARD S. LABRIOLA,

      Plaintiffs,

v.

KNIGHTS OF COLUMBUS,
THOMAS P. SMITH, JR.,
MATTHEW A. ST. JOHN,

  Defendants.

---

**MOTIONS OF DEFENDANT KNIGHTS OF COLUMBUS TO (*1*) DISMISS FIRST CLAIM (RICO), (*2*) DISMISS SECOND AND THIRD CLAIMS (BREACH OF CONTRACT AND PROMISSORY ESTOPPEL), (*3*) DISMISS EIGHTH CLAIM (SLANDER *PER QUOD*), AND (*4*) STRIKE IMMATERIAL, IMPERTINENT, AND SCANDALOUS MATTER; AND REQUEST FOR ORAL ARGUMENT**

---

Defendant Knights of Columbus, through Lewis Roca Rothgerber Christie LLP and pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f), moves (1) to dismiss the First Claim alleging violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) for failure to state a claim, (2) to dismiss the Second and Third Claims alleging breach of contract and promissory estoppel as time-barred, (3) to dismiss the Eighth Claim (slander *per quod*) as failing to state a claim, and (4) to strike from Plaintiffs' First Amended Complaint filed February 10, 2017 [Doc. No. 15] ("Am. Compl."), the immaterial, impertinent, and scandalous matter pled as paragraphs 1, 31-47, 84-86, and 89-101.

## INTRODUCTION

This is – or should be – a garden-variety business dispute. Plaintiffs claim that on September 10, 2011, "a contract was formed" whereby Plaintiff UKnight, a vendor of website templates (Am. Compl. ¶ 12), would be chosen "as designated vendor for the entire Knights of Columbus fraternity" and "formally announce[d] . . . as such" (*id.* ¶ 18). There is no written contract. According to Plaintiffs, a contract either "was confirmed by numerous emails," or "[i]n the alternative, . . . must be implied in fact." (*Id.* ¶¶ 105-108.) Plaintiffs say the Knights of Columbus breached this purported contract, and claim to have sustained lost profits and other economic damages as a result. (*Id.* ¶ 110.)

Plaintiffs, however, are trying to leverage their breach-of-contract case into a claim under RICO, and they have festooned their complaint with baseless, scandalous allegations that are designed only to inflame and attract publicity. Defendant the Knights of Columbus (the "Order") moves the Court to dismiss the RICO claim under Rule 12(b)(6) for failure to state a claim and, pursuant to Rule 12(f), to order stricken from the First Amended Complaint the scandalous allegations for which RICO serves as pretext. The Order also asks the Court to dismiss the breach-of-contract and promissory estoppel claims as barred by the statute of limitations, and to dismiss the slander *per quod* claim because actual damages are not adequately pled and the claim, in any event, is clearly time-barred.

For purposes of these motions, which are brought pursuant to Rule 12(b)(6) and Rule 12(f), the Court "must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff," though "purely conclusory allegations are not

entitled to be presumed true." *Brown v. Premier Roofing, LLC*, 173 F. Supp. 3d 1181, 1184 (D. Colo. 2016).

## I.  MOTION TO DISMISS FIRST CLAIM FOR RELIEF (RICO) PURSUANT TO FED. R. CIV. P. 12(b)(6)

Plaintiffs come to the Court as a disappointed vendor of website templates, claiming an oral or implied contract with the Knights of Columbus. That is no basis for a RICO claim. As the court aptly noted in *D.M. Robinson Chiropractic, S.C. v. Encompass Ins. Co. of Am.*, "RICO did not federalize every state common-law cause of action available to remedy business deals gone sour. Nor can a breach of contract claim be transmogrified into a RICO claim by the facile device of charging that the breach was fraudulent." 2013 WL 1286696, at *7 (N.D. Ill. 2013) (citation, quotations, and alteration omitted).

### A.  Pleading Standard

The standard governing this motion to dismiss is as stated in *D.M. Robinson*:

> Under Rule 12(b)(6), a party may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see also Limestone Dev. Corp. v. Village of Lemont,* 520 F.3d 797, 803 (7th Cir.2008) (in complex RICO cases "a fuller set of factual allegations . . . may be necessary"). The complaint is read in the light most favorable to Plaintiffs.

2013 WL 1286696, at *7.

### B.  RICO Elements

To establish a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must first show that the defendant "(1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100

(10th Cir. 1999) (citations and internal quotation omitted); *see also Brannon v. Boatmen's First Nat. Bank of Oklahoma*, 153 F.3d 1144, 1146 (10th Cir. 1998).[1] "A civil plaintiff must also show (1) the requisite injury to business or property, and (2) that such injury was by reason of the substantive RICO violation." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (quotation omitted).

Additionally, where, as here, claims of fraud are relied upon as RICO predicate, the plaintiff must meet the heightened pleading requirements of Rule 9(b), which require a plaintiff to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Internet Archive v. Shell,* 505 F. Supp. 2d 755, 768 (D. Colo. 2007) (Babcock, J.). And "[w]hen a plaintiff is dealing with more than one defendant, he or she is under a Rule 9(b) obligation to specify which defendant told which lie and under what circumstances." *Id.*

### C.     The Alleged Enterprise

With respect to the critical "enterprise" element of the RICO claim, the First Amended Complaint offers the following:

> 64.     At all relevant times, the Knights of Columbus fraternity as a whole, including the KC Supreme council, its officers and directors, the state councils, local councils, assemblies, independent insurance agents, and members constituted an "association-in-fact" enterprise as defined in 18 U.S.C. § 1861(4), consisting of thousands of individuals and separate legal entities. At all relevant

---

[1] Plaintiffs' First Claim for Relief (RICO) is titled "Violation of 18 U.S.C. §§ 1962(c) and (d)," and in paragraphs 100-101 of the First Amended Complaint, Plaintiffs offer a three-sentence claim of RICO conspiracy in violation of § 1962(d). However, "[a] conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim based on § 1962(c) is without merit." *BancOklahoma*, 194 F.3d at 1103. In other words, where a plaintiff's "§ 1962(c) claims are without merit, its conspiracy claims under § 1962(d) also fail." *Id.*; *see also D.M. Robinson*, 2013 WL 1286696, at *12 ("Because Plaintiffs did not adequately allege a RICO enterprise, their § 1962(d) claims are also dismissed.").

times, this enterprise has been engaged in, and its activities affected, interstate and foreign commerce. Such enterprise furnished the vehicle for the commission of a pattern of racketeering activity by Defendants.

(Am. Compl. ¶ 64.) This alleged enterprise has been in existence for 135 years, having been "originally founded in 1882." (*Id.* ¶ 14.)

### D.   The Knights of Columbus is Not Distinct from the "Knights of Columbus Fraternity as a Whole"

Plaintiffs' "enterprise" allegation (*id.* ¶ 64) is plainly insufficient under RICO. "[F]or purposes of 18 U.S.C. § 1962(c), *the defendant 'person' must be an entity distinct from the alleged 'enterprise.'" Brannon*, 153 F.3d at 1146 (emphasis added). Here, the defendant "person" (the Knights of Columbus) and the alleged "enterprise" (the Knights of Columbus fraternity as a whole) are indistinct – indeed, under the RICO cases cited below, they are one and the same. Therefore, the First Claim (RICO) fails to state a claim, and must be dismissed under Rule 12(b)(6).

The Tenth Circuit and this Court have repeatedly held that an enterprise distinct from the RICO defendant is not demonstrated by allegations that an organization committed a pattern of predicate acts in the conduct of its own affairs, and that where, as here, an organizational defendant is accused of acting through its employees and agents, there is no RICO enterprise.

*Brannon*, in holding that "a parent-subsidiary corporate relationship standing alone is [not] enough to invoke RICO liability," *id.* at 1145, and affirming a Rule 12(b)(6) dismissal of a civil RICO claim on that basis, explained:

> It is well-settled in this circuit, as in most others, that for purposes of 18 U.S.C. § 1962(c), the defendant "person" must be an entity distinct from the alleged "enterprise." This interpretation flows from the statute's mandate that the person who engages in the pattern of racketeering activity be "employed by or associated with" the enterprise. 18 U.S.C. § 1962(c); *see Yellow Bus Lines, Inc. v. Local*

> *Union 639,* 883 F.2d 132, 139 (D.C. Cir. 1989) ("Logic alone dictates that one
> entity may not serve as the enterprise and the person associated with it because
> . . . 'you cannot associate with yourself.'") (quoting *McCullough v. Suter,* 757
> F.2d 142, 144 (7th Cir.1985)).

*Id.* at 1146 (some citations omitted).

The alleged enterprise in *Board of County Commissioners of San Juan County v. Liberty Group*, 965 F.2d 879, 881 (10th Cir. 1992), consisted of a corporation, the corporation's general partners (both legal entities in their own right), the corporation's successor in interest, a corporate officer, and a corporate employee. Holding this to be insufficient to state a RICO claim, the Tenth Circuit stated:

> The language of the statute clearly contemplates that the "person" charged will be
> distinct from the "enterprise," since a person cannot logically be "employed by or
> associated with" himself. *If Liberty Group is found to have violated RICO,
> liability under § 1962(c) must be based on Liberty Group's association with some
> entity separate from itself. . . . [A] separate enterprise is not demonstrated by the
> mere showing that the corporation committed a pattern of predicate acts in the
> conduct of its own business.*

*Id.* at 885 (emphasis added, paragraph break omitted).

In *Internet Archive v. Shell*, the alleged RICO enterprise was a non-profit organization, Internet Archive, and its directors. This Court held that to be insufficient to state a RICO claim, and dismissed the claim under Rule 12(b)(6):

> Shell's allegation of an enterprise rests on an enterprise relationship between
> Internet Archive the defendant and Internet Archive acting with its directors as the
> enterprise. But it is well-established in the Tenth Circuit that "the defendant
> person must be an entity distinct from the alleged enterprise." *Brannon v.
> Boatmen's First Nat. Bank of Oklahoma*, 153 F.3d  1144, 1146 (10th Cir. 1998).
> Enterprise liability under RICO depends on showing that the defendant conducts
> or participates in the conduct of the enterprise's affairs, not just its own affairs.
> *For [a defendant] to be liable under RICO, its liability must be based on its
> association with an enterprise possessing an existence and purpose distinct from
> itself. A separate enterprise is not demonstrated by the mere showing that the*

> *corporation committed a pattern of predicate acts in the conduct of its own business.*

505 F. Supp. 2d at 769 (emphasis added, citation and quotation omitted); *see also Llacua v. Western Range Ass'n,* 2016 WL 7405468, at *13 (D. Colo. 2016) ("[P]leading the usual business between an association and its members fails the distinctiveness element. If an entity is named as a defendant in a RICO action, the enterprise it participates in cannot merely be a reframing of the same entity that is the target of the indictment." (citation, quotation, and alteration omitted)); *Ray v. Spirit Airlines*, 836 F.3d at 1355 ("[I]n an association-in-fact enterprise, a defendant corporation cannot be distinct for RICO purposes from its own officers, agents, and employees when those individuals are operating in their official capacities for the corporation."); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 226 (7th Cir. 1997) (affirming Rule 12(b)(6) dismissal of RICO claim against Chrysler Corporation where alleged enterprise was "a 'Chrysler family' consisting of subsidiaries of the Chrysler Corporation engaged in various facets of production, financing, and marketing of Chrysler automobiles, plus Chrysler's dealers, plus trusts controlled by Chrysler that in essence resell retail installment contracts for the purchase of Chrysler automobiles to the investing public"); *New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1163 (4th Cir. 1994) (international union was not distinct under RICO from its officers, directors, employees, agents, subagents, and state and local union affiliates).

In contrast to these cases, according to the plaintiffs' complaint in *George v. Urban Settlement Services*, 833 F.3d 1242, 1250 (10th Cir. 2016), Bank of America (BOA) and Urban Settlement Services – "two separate legal entities – joined together, along with several other entities, to form and conduct the affairs of the BOA-Urban association-in-fact enterprise." The

plaintiffs' RICO claim "arose from the defendants' allegedly fraudulent administration of the Home Affordable Modification Program (HAMP)." *Id.* at 1246. They alleged that "BOA conducted the enterprise's affairs, rather than BOA's own affairs, by acting in concert with Urban and other members of the enterprise to implement and execute a scheme to fraudulently deny HAMP loan modifications to qualified borrowers." *Id.* at 1250. Urban was not "a BOA subsidiary, a BOA agent, even part of the BOA corporate family." *Id.* Such allegations were held "sufficient to plausibly allege that BOA is both sufficiently distinct from the BOA-Urban association-in-fact enterprise and that BOA conducted the affairs of the enterprise rather than simply its own affairs." *Id.* at 1250-51.

No such circumstances are alleged here. Plaintiffs have not alleged the Order's association with an enterprise possessing an existence and purpose distinct from itself; rather, they have merely alleged acts of the Order in the conduct of its own business. Accordingly, they have a failed to state a RICO claim.

### E.   <u>No Proximate Cause</u>

As noted above, under RICO, a "civil plaintiff must . . . show (1) the requisite injury to business or property, and (2) that such injury was by reason of the substantive RICO violation." *Ray v. Spirit Airlines*, 836 F.3d at 1348 (quotation omitted). As the court explained in *Ray*:

> Thus, a defendant who commits an act of racketeering is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured. Rather, pleading a civil RICO claim requires that plaintiffs plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity . . . was the but-for *and* proximate cause of the plaintiffs' injuries. The connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect. When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.

*Id.* at 1349 (emphasis in original; citations and quotations omitted); *see also D.M. Robinson*, 2013 WL 1286696, at *7 ("The plaintiff must also properly allege that the RICO violation was the proximate cause of his or her damages." (quotation and alteration omitted)).

Plaintiffs appear to recognize this requirement that they plead "Proximate Injury to Plaintiff UKnight" directly resulting from the racketeering they allege. (Am. Compl., p.38, Part I of First Claim (RICO).) However, they do not satisfy it. Like the complaint in *Ray*, Plaintiffs' First Claim "pleads causation only at the highest order of abstraction and supports the [proximate injury] claim only with conclusory assertions; notably absent is an allegation of any specific fact that would make those conclusions plausible." *See* 836 F.3d at 1350.

The only injury pled in the First Claim is injury for which Plaintiffs elsewhere seek recovery under their breach of contract, intentional and negligent misrepresentation, and misappropriation of trade secrets claims; they plead no injury to them proximately caused by the racketeering they allege. More particularly, the First Claim, in paragraph 102, under the heading "Proximate Injury to Plaintiff UKnight," alleges no more than that UKnight (i) "was wrongfully induced to enter into a contractual relationship with KC Supreme," (ii) "was wrongfully induced to focus exclusively on KC Supreme and to endure its scheme of delays," and (iii) was "set up and pilfered of its trades *[sic]* secrets." (Am. Compl. ¶ 102.)

The claimed racketeering activity in this case is "an elaborate conspiracy to artificially inflate the Knights of Columbus' insurable membership numbers and artificially improve the demographic structure of this [insurance] risk-pool," and the Knights of Columbus "fraudulently misrepresenting its Standard & Poors *[sic]* insurance rating as 'AAA' for nearly six years." (*Id.* ¶¶ 31, 46.) Plaintiffs say in paragraph 1 of their First Amended Complaint ("Nature of Action")

that Defendants have thereby "systematically deceived *their insured-members*" (emphasis added). But Plaintiffs have failed to plead facts sufficient to give rise to a reasonable inference that any of this has caused *Plaintiffs* any injury. For this reason, too, their RICO claim must be dismissed.

## II.   MOTION TO DISMISS SECOND AND THIRD CLAIMS (BREACH OF CONTRACT AND PROMISSORY ESTOPPEL) PURSUANT TO FED. R. CIV. P. 12(b)(6)

Plaintiffs' Second and Third Claims are for breach of contract and promissory estoppel, respectively. Both claims should be dismissed because, taking the allegations of the First Amended Complaint as true, the claims are time-barred as a matter of law.

Plaintiffs allege that the Order and UKnight "entered into an express contract on September 10, 2011," under which the Order's "only performance obligation was to announce UKnight as its designated vendor and direct its state and local councils, assemblies, and agents to subscribe to the UKnight system." (Am. Compl. ¶ 105.) Plaintiffs allege the Order "failed to perform its obligation under that contract by never formally announcing that UKnight was its designated vendor, and never directing state and local councils, assemblies, and agents to subscribe to the UKnight system." (*Id.* ¶ 108.) Even though the value of this alleged contract was supposedly "in excess of $100 million" (*id.* ¶ 2), it was not a written contract. Rather, Plaintiffs allege it was "an express contract . . . that could be performed in less than one year" and "was confirmed by numerous emails" (*id.* ¶ 105), or alternatively was a contract "implied in fact . . . based on the course of dealing of the parties" (*id.* ¶ 106).

Plaintiffs promissory estoppel claim is premised on the same theory: that the Order made "promises to UKnight" that it failed to fulfill. (*Id.* ¶ 112.) While Plaintiffs purport to identify

several distinct "promises" by the Order between 2011 and 2014, it is clear that the promissory estoppel claim – like the contract claim – is predicated on a single supposed promise: "the promise by [the Order] on September 10, 2011 that it would announce UKnight as its designated vendor and instruct all state and local councils to subscribe to the UKnight system." (*Id.* ¶ 112(a).) According to Plaintiffs, this announcement was supposed to "take place in February 2012." (*Id.* ¶ 112(b).) All the other "promises" Plaintiffs purport to describe simply refer back to this original "deal." (*See id.* ¶ 112(c)-(g); *see also id.* ¶ 26 (referring to the "original September 2011 agreement").)

It is crucial to Plaintiffs' theory of this case that the Order's alleged oral contract or promise could have been performed instantaneously. Otherwise, Plaintiffs run headlong into a Statute of Frauds problem. *See Peace v. Parascript Mgmt., Inc.*, 59 F. Supp. 3d 1020, 1027 (D. Colo. 2014) (agreement was void under Statute of Frauds, C.R.S. § 38-10-112(1)(a), because it was not in writing, not signed by party to be charged, and incapable of performance within one year); *Dubton House, Inc. v. St. Marys Paper, Ltd.*, 111 F. Supp. 2d 115, 117 (D. Conn. 1999) (same under Conn. Gen. Stat. § 52550(a)(5)). Plaintiff thus allege that that the Order "could have completed its performance obligations *in a single day*" (*id.* ¶ 21 (emphasis added)), and they plainly state that the Order's "*only* performance obligation was to *announce* UKnight as its designated vendor and *direct* its state and local councils, assemblies, and agents to subscribe to the UKnight system" (*id.* ¶ 105 (emphases added)). Put otherwise, the alleged oral contract or promise in this case did not require continuous performance or a series of performances over a period of time.

Colorado's statute of limitations for contract claims is three years, C.R.S. § 13-80-101(1)(a), and because Plaintiffs' promissory estoppel claim is "also contractual in nature," it is subject to the same limitations period, *Berg v. State Bd. of Agric.*, 919 P.2d 254, 261 (Colo. 1996). *See Rodell v. Objective Interface Sys., Inc.*, No. 2015 WL 5728770, at *3 (D. Colo. 2015). Both the contract and promissory estoppel claims accrued on the date the alleged breach or failure to perform "[was] discovered or should have been discovered by the exercise of reasonable diligence." C.R.S. § 13-80-108(6); *see Berg*, 919 P.2d at 261 ("contractual" promissory estoppel claim accrued at same time as contract claim). Under Connecticut law, the limitations period and accrual analysis are identical, precluding the need for a conflict-of-laws analysis.[2]

The First Amended Complaint identifies a date certain for the making of the alleged contract or promise – September 10, 2011 (Am. Compl. ¶¶ 23, 105, 112(a)) – and a date certain for the alleged breach – February 2012 (*id.* ¶ 112(b)). The latter subparagraph alleges that the Order "promise[d] . . . in September 2011 that the announcement of UKnight as designated vendor ***would take place in February 2012***." (*Id.* ¶ 112(b) (emphasis added).) Plaintiffs' contract

---

[2] Under Connecticut law, the statute of limitations is six years for a written contract and three years for an oral contract. *See Steward Mach. Co. v. White Oak Corp.*, 462 F. Supp. 2d 251, 277 (D. Conn. 2006). The three-year limitations period applies to an action "founded upon any express contract or agreement which is not reduced to writing, or of which some note or memorandum is not made in writing and signed by the party to be charged therewith." *Id.* (quoting Conn. Gen. Stat. § 52-581(a)) (internal quotation marks omitted). "Because promissory estoppel claims sound in contract, they are subject to the same statutes of limitation that govern ordinary contract actions." *Zielinski v. Heinemann*, 2008 WL 2185941, at *5 (D. Conn. 2008) (citing *Torringford Farms Ass'n v. City of Torrington*, 816 A.2d 736, 738, 741 (Conn. App. 2003)). "[I]n an action for breach of contract . . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted. . . . [I]t is well established that ignorance of the fact that damage has been done does not prevent the running of the statute." *Tolbert v. Conn. Gen. Life Ins. Co.*, 778 A.2d 1, 5 (Conn. 2001) (quotations and emphasis omitted).

and promissory estoppel claims therefore accrued in February 2012 and were time-barred as of February 2015, well before Plaintiffs filed this action.

The First Amended Complaint identifies a series of later dates – each of which occurred over three years before Plaintiffs filed their complaint – on which an announcement was not made. (*See id.* ¶¶ 25-30, 88(b).) None of these, however, is a proper accrual date. Plaintiffs' claims accrued "on the date" that Plaintiffs discovered or reasonably should have discovered the alleged breach or failure to perform. C.R.S. § 13-80-108(6). Plaintiffs' own pleadings leave no doubt that this occurred in February 2012.

Colorado law does recognize that a "series of breaches" can give rise to separate causes of action where each "separate breach" is "subject to a separate limitations period." *St. Paul Fire & Marine Ins. Co. v. N. River Ins. Co.*, 2012 WL 4464380, at *5 (D. Colo. 2012). But this is true only if the contract "require[s] a series of performances over a period of time." *Id.* (quoting *Neuromonitoring Assocs. v. Centura Health Corp.*, 2012 COA 136, ¶ 35) (internal quotation marks omitted). That is, successive accrual dates on the same contract or promise are possible only when there is a "continuing duty to perform." *Neuromonitoring Assocs.*, 2012 COA 136, ¶ 36.[3] Here, by contrast, Plaintiffs allege that there was *not* a continuing duty to perform. Rather, Plaintiffs' contract and promissory estoppel claims are predicated on their allegation that the Order had a singular, discrete obligation – to announce UKnight as the designated vendor and direct constituents to subscribe (Am. Compl. ¶ 105) – which could have been accomplished "in a

---

[3] Connecticut has a similar rule. *See Vaccaro v. Shell Beach Condo., Inc.*, 148 A.3d 1123, 1140-41 (Conn. 2016) (tolling statute of limitations for breach of contract only where defendant "(1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty" (quotation omitted)).

single day" (*id.* ¶ 21). For the same reason, there was a "single day" on which the alleged contract or promise was breached, and by Plaintiffs' own admission, that day fell in February 2012. (*Id.* ¶ 112(b).)

Under Colorado or Connecticut law, Plaintiffs had three years from the date of accrual to bring their Plaintiffs' Second and Third Claims for breach of contract and promissory estoppel. These claims accrued in February 2012 and expired in February 2015. Because Plaintiffs brought these claims well beyond the limitations period, the Court should dismiss them.

**III.   MOTION TO DISMISS EIGHTH CLAIM FOR RELIEF (SLANDER *PER QUOD*) PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Plaintiffs' Eighth Claim for Relief is for "Slander *Per Quod*." It is based on a single statement Mr. Smith allegedly made on January 24, 2014. (Am. Compl. ¶ 140). The Eighth Claim should be dismissed for two reasons: (1) Plaintiffs have failed to plead the requisite actual damages, and (2) the claim is barred by the statute of limitations.

**A.   Connecticut Law Applies to the Eighth Claim**

Mr. Smith's alleged statement was made "in a meeting . . . in New Haven, Connecticut." (Am. Compl. ¶ 140). In determining which state's law to apply, a federal court "applies the choice of law principles of the state in which it sits." *Century 21 Real Estate Corp. v. Meraj Intern. Inv. Corp.*, 315 F.3d 1271, 1281 (10th Cir. 2003). For defamation claims, Colorado applies the law of the state with "the most significant relation with the parties." *Zimmerman v. Bd. of Publ'ns of Christian Reformed Church, Inc.*, 598 F. Supp. 1002, 1011 (D. Colo. 1984).

To determine this "most significant relationship," Colorado has adopted the test expressed in *Restatement (Second) of the Conflicts of Laws*. *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 508 (Colo. 2007). Under that test, the relevant factors are: "(a) the place

where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* at 510 (quoting *Restatement (Second) of Conflict of Laws* § 145 (1971)) (internal quotation marks omitted). Courts should evaluate these contacts "according to their relative importance with respect to the particular issue." *Id.*

Those factors favor applying Connecticut law in the case of the Eighth Claim. The first factor is neutral. While Plaintiff UKnight is a Colorado company, and Plaintiff Leonard Labriola is a Colorado resident, two of UKnight's three members, Terry Clark and Jonathan Michlik, are residents of Texas. Yet Plaintiffs do not claim to have suffered injury in either place; they allege only that the statement "poisoned the relationship" between UKnight and "many of its prospective customers" (Am. Compl. ¶ 143), without specifying who these "prospective customers" are or where they are located. This factor, therefore, has little impact on the analysis. The second factor clearly favors Connecticut, because that is where the alleged statement claimed to have caused injury was made. The third factor cuts in favor of Connecticut. As already mentioned, the plaintiffs are split in their residence: Mr. Labriola and UKnight are Colorado residents, while Mr. Clark and Mr. Michlik are Texas residents. However, the two defendants against whom the claim is brought – the Order and Mr. Smith – are residents of Connecticut. The final factor also favors Connecticut, because the meetings and business relationships that led to this alleged statement originated in Connecticut.

Thus, looking at all these factors and their "relative importance," Connecticut has the closest relationship to the parties, so its law governs the Eighth Claim.

**B.**   **Plaintiffs Have Not Adequately Pled Actual Damages**

In actions for slander *per quod*, plaintiffs "must plead and prove actual damages in order to recover." *Lega Siciliana Soc. Club, Inc. v. St. Germaine*, 825 A.2d 827, 832 (Conn. App. 2003); *see Marshall v. Webster Bank, N.A.*, 2011 WL 1303373, at *2 (D. Conn. 2011) (noting that for libel *per quod*, "a plaintiff must plead and prove actual damages, in the form of economic loss" and that "allegations of damage to reputation are insufficient"); *see also DeMorais v. Wisniowski*, 841 A.2d 226, 232 n.6 (Conn. App. 2004) (same analysis applies to libel *per quod* and slander *per quod*). Plaintiffs' Eighth Claim should be dismissed because the First Amended Complaint fails to adequately plead actual damages.

In paragraph 142 of the First Amended Complaint, Plaintiffs allege that Mr. Smith's remark "harmed Mr. Labriola's and UKnight's reputation." But this is plainly insufficient under both Connecticut law and federal pleadings standards. *See Marshall*, 2011 WL 1303373, at *2 (general allegation of damage to reputation is insufficient); *see also Shea v. City of Waterbury*, 2009 WL 1057986, at *7 (Conn. Super. Ct. 2009) (striking defamation *per quod* claim because while plaintiffs pled "general damages in the form of mental distress, harm to their reputation, anxiety, and humiliation," they "failed to plead . . . specific pecuniary harm or a specific economic loss").

Only barely more specific, paragraph 143 of the First Amended Complaint alleges that Mr. Smith's statement "poisoned the relationship between Mr. Labriola and UKnight and many of its prospective customers causing them to not subscribe to the UKnight system." But this allegation, too, falls short. In *Learning Care Group, Inc. v. Armetta*, 2014 WL 12651264, at *16 (D. Conn. 2014), the district court in Connecticut dismissed a defamation claim under Rule

12(b)(6) for precisely this reason.[4] The plaintiffs had alleged that certain statements by the defendant "negatively impacted [plaintiffs'] future business prospects as a result of destroying the working relationship that existed between Ms. DeWalt [plaintiffs' business contact] and [plaintiffs]." *See id.* The court held this was not enough: "The Complaint does not allege facts that would enable the Court to discern how the breakdown of this relationship has proximately led to pecuniary loss," and "[t]he Complaint fails to plead any particular business opportunity [plaintiffs] lost as a result of the statement, or to identify any actual lost sales, contract or customer." *Id.*

Plaintiffs' allegations here are deficient for precisely the same reasons. *Compare Marshall*, 2011 WL 1303373, at *3 (plaintiff adequately pled special damages because complaint "provides *specific allegations* concerning *the manner* in which the false report led to lost business opportunities" (emphases added)). The Eighth Claim should be dismissed under Rule 12(b)(6) because it does not plead the actual damages necessary to support a slander *per quod* claim.[5]

**C.**      **Plaintiffs' Claim Is Barred by the Statute of Limitations**

In addition, the Eighth Claim for Relief is barred by the statute of limitations. In Connecticut, the statute of limitations for slander is two years from the date of the slanderous statement. *See* Conn. Gen. Stat. § 52-597 ("No action for libel or slander shall be brought but

---

[4] Although the plaintiff had pled a claim of commercial disparagement, the court held the claim should have been brought as one for defamation. *See Armetta*, 2014 WL 12651264, at *16.

[5] Even though Connecticut law applies, the result is the same under Colorado law, which provides that slander *per quod* is "actionable only if special damages are pleaded and can be proved." *Lind v. O'Reilly*, 636 P.2d 1319, 1320 (Colo. App. 1981). "'Special damages' are limited to specific monetary losses, if any, which a plaintiff incurs. . . . Special damages do not include injuries to a plaintiff's reputation or feelings which do not result in specific monetary loss." *Id.*

within two years from the date of the act complained of.").[6] The statute of limitations starts running when the communication is made. *Cweklinsky v. Mobil Chemical Co.*, 837 A.2d 759, 765 (Conn. 2004) ("The statute of limitations for a defamation claim begins on the date of publication."); *Gianetti v. Conn. Newspapers Pub. Co.*, 44 A.3d 191, 195 (Conn. App. 2012) ("The statute of limitations for bringing a libel action is two years from the date of the act complained of.").

Here, the complained-of statement by Mr. Smith is alleged to have been made on January 24, 2014. (Am. Compl. ¶ 140). This case was not filed until three years later, on January 24, 2017. Accordingly, the Eighth Claim is barred by the statute of limitations and should be dismissed.

## IV. MOTION TO STRIKE IMMATERIAL, IMPERTINENT, AND SCANDALOUS MATTER FROM AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(f)

As shown above, Plaintiffs' RICO claim should be dismissed under Rule 12(b)(6). Paragraphs 1, 31-47, 84-86, and 89-101 of the First Amended Complaint make scandalous accusations that are impertinent to any of the remaining claims. The Court should strike those paragraphs from the complaint under Rule 12(f), which permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

This Court will grant a motion to strike "when the allegations have no bearing on the controversy and the movant can show that he has been prejudiced." *Seybold v. Weld Cnty. Sheriff's Office*, 2008 WL 4489269, at *1 (D. Colo. 2008). The movant must show that the

---

[6] Colorado's statute of limitations for slander actions is one year from the date of discovery. *See* C.R.S. §§ 13-80-103(1)(a), 13-80-108(1).

allegations are "so unrelated to plaintiff's claims as to be unworthy of any consideration." *United States v. Shell Oil Co.*, 605 F. Supp. 1064, 1085 (D. Colo. 1985) (quotation omitted). Allegations are prejudicial if they will "needlessly increase the time and expense of trial or duration and expense of litigation." *State v. United Parcel Serv.*, 160 F. Supp. 3d 629, 665 (S.D.N.Y. 2016) (quotation omitted); *see Seybold*, 2008 WL 4489269, at *1 (granting motion to strike and stating "[t]he purpose of Rule 12(f) is to save the time and money that would be spent litigating issues that will not affect the outcome of the case" (quotation omitted)). This Court has "considerable discretion . . . to strike redundant, impertinent, immaterial, or scandalous matter." 5A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, § 1382 (3d. ed.).

Through the transparent abuse of RICO, Plaintiffs are trying to turn this plain-vanilla contract case into a tabloid-style attention-grabber. Plaintiffs have made fantastic allegations of racketeering and conspiracy, using scare words like "Ponzi scheme," "Enron," and "Arthur Anderson [*sic*]," that bear no relation to any genuine dispute before this Court. (*See* Am. Compl. ¶¶ 32, 40.) These allegations add no substance. They have but one objective: to inflame this dispute, attract publicity, discourage the Order's members, and increase Plaintiffs' leverage.

Indeed, Plaintiffs have already had some early "success." On the same day this case was filed, their allegations were published in *The Denver Post* under the headline "Denver lawsuit calls Knights of Columbus life insurance pool a racketeering scheme."[7] Using his Twitter account, Plaintiffs' counsel promptly retweeted the article,[8] which all but parrots the utterly false accusation that the Knights of Columbus insurance program "is only one step removed from a classic Ponzi scheme" and "may very well be on the verge of financial collapse." Mr. Labriola

---

[7] http://www.denverpost.com/2017/01/24/lawsuit-knights-of-columbus-life-insurance-pool/.
[8] *See* https://twitter.com/jeffreyvail.

then emailed the incendiary complaint to untold members of the Knights of Columbus and sent a summarized version of it to approximately 20 members of the Knights in the form of a fake "push poll" that announced he would thereafter send it to 1,600 council leaders and then to 170,000 additional member Knights. These are improper extortionary tactics designed to increase leverage on the Order in what should be a run-of-the-mill commercial dispute.

The Knights of Columbus is a Catholic religious society founded in 1882 by Father Michael McGivney, a parish priest in New Haven, Connecticut. Father McGivney, moved by his Catholic faith and his love of neighbor, founded the Order to provide charitable outreach, to strengthen the faith of its members, and to care for Catholic families, particularly widows and orphans. The Order is the world's largest Catholic fraternal service organization, with approximately 1.9 million members throughout the world. In 2015, it donated more than $175 million to charity, and member Knights volunteered more than 73 million hours of service in support of charitable initiatives. The Order carries out its mission by managing a fraternal benefit society program that gives member Knights access to life insurance and other benefits, providing financial security to families residing in the United States and Canada. The Order's insurance program has A.M. Best's highest rating, A++ (Superior), and holds Standard & Poor's highest rating currently given to U.S.-based insurers, AA+.

Plaintiffs' reckless claim that the Knights of Columbus is a racketeering scheme formed to engage in illegal activity is baseless and scandalous. It is fake news dressed up as a legal complaint, and later repackaged into a newspaper article, a retweet, an email, and a push poll – all calculated to extort a settlement through damaging publicity having nothing to do with

Plaintiffs' core allegations about breach of contract and business torts. This is a flagrant abuse of RICO and, even, of the right to conduct civil litigation.

Plaintiffs' RICO claim should be dismissed for reasons already laid out. And along with it, Plaintiffs' scandalous accusations in paragraphs 1, 31-47, 84-86, and 89-101 should be stricken. *See Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003) ("[T]his invective does nothing to inform [defendant] of the charges it must answer, but serves only to inflame and should be stricken.").

This case is very much like *Xerox Corp. v. ImaTek, Incorporated*, 220 F.R.D. 244 (D. Md. 2004). In that case, after Xerox sued ImaTek for breach of contract, ImaTek asserted various counterclaims and alleged that Xerox, for over a decade, had engaged in "unorthodox accounting practices without reporting the results of those practices to the Securities and Exchange Commission." *Id.* at 245. The court ordered these allegations stricken because they "d[id] not have any relevance whatsoever to ImaTek's claims for breach of contract, fraud or unjust enrichment." *Id.* ImaTek tried to argue that the allegations "shed light on Xerox's motivation to breach its contract and commit fraud." *Id.* In fact, this is precisely the tactic Plaintiffs use in their First Amended Complaint. (*See, e.g.*, Am. Compl. ¶ 61 (baldy asserting, with no factual basis, that the Order declined to do business with UKnight "so that UKnight's system would not uncover and reveal Defendants' fraud").) The court in *Xerox* saw through this ploy: "It is far more likely that ImaTek is attempting to use entirely unrelated legal controversies involving Xerox to 'muddy the waters' in this relatively straightforward case." 220 F.R.D. at 245. Finding that "Xerox would be prejudiced by the additional and unnecessary costs required to respond to ImaTek's wholly irrelevant allegations," the court struck the improper allegations. *Id.*

The same relief is warranted here. Plaintiffs' sensational and baseless theories about inflated membership figures, hoodwinked ratings agencies, and systematic deception of members have nothing to do with their breach-of-contract and business tort claims, and everything to do with "muddying the waters" and creating a fake scandal. The Order would be prejudiced by the additional and unnecessary costs of having to respond to these allegations, and it would be a waste of this Court's time as well. *See id.* The Order therefore requests that the Court strike paragraphs 1, 31-47, 84-86, and 89-101 from the First Amended Complaint as impertinent, immaterial, and scandalous.

## CONCLUSION

The Court, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f), should (1) dismiss the First Claim alleging violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) for failure to state a claim, (2) dismiss as time-barred the Second and Third Claims alleging breach of contract and promissory estoppel, (3) dismiss the Eighth Claim (slander *per quod*) both for failure to state a claim and as time-barred, and (3) strike from Plaintiffs' First Amended Complaint the immaterial, impertinent, and scandalous matter pled as paragraphs 1, 31-47, 84-86, and 89-101.

## REQUEST FOR ORAL ARGUMENT

The Order respectfully requests oral argument in connection with the above motions.

DATED: February 23, 2017.

Respectfully submitted,

*s/ Edward A. Gleason*
Edward A. Gleason
L. Martin Nussbaum
Hermine Kallman
Ian Speir
LEWIS ROCA ROTHGERBER CHRISTIE LLP
90 South Cascade Avenue, Suite 1100
Colorado Springs, CO 80903
Telephone: 719.386.3000
Facsimile:  719-386-3070
Email:  egleason@lrrc.com

*Attorneys for Defendant Knights of Columbus*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of February, 2017, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF System, which will send notification to the following:

Jeffrey S. Vail, Esq.
VAIL LAW LLC
5299 DTC Blvd., Suite 1101
Greenwood Village, CO  80111


*s/ Arlene K. Martinez*
Arlene K. Martinez