**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-00210-RBJ

LIST INTERACTIVE, LTD. D/B/A UKNIGHT INTERACTIVE,

      Plaintiff,

v.

KNIGHTS OF COLUMBUS,
DAVID J. KAUTTER, IN HIS OFFICIAL CAPACITY AS (ACTING) COMMISSIONER OF
THE INTERNAL REVENUE SERVICE

      Defendants.

KNIGHTS OF COLUMBUS,

      Counterclaim Plaintiff,

v.

LiST INTERACTIVE, LTD. D/B/A UKNIGHT INTERACTIVE,
LEONARD S. LABRIOLA, WEBSINC.COM, INC., STEPHEN S. MICHLIK, JONATHAN S.
MICHLIK, AND TERRY A. CLARK,

      Counterclaim Defendants.

---

**DEFENDANT KNIGHTS OF COLUMBUS'S ANSWER TO SECOND AMENDED
COMPLAINT, COUNTERCLAIM, AND JURY DEMAND**

---

      Defendant Knights of Columbus, by its attorneys, answers Plaintiff's Second Amended

Complaint dated January 11, 2018, as follows:

<u>**Nature of Action**</u>

      1.    The Defendant, Knights of Columbus ("Order" or "Defendant"), denies the

allegations of paragraph 1 of the Second Amended Complaint. The true nature of this action is

that Plaintiff ("UKnight") is a disappointed prospective vendor that offered the Order inferior and outdated website services that the Order refused to endorse. UKnight is now trying to accomplish through this lawsuit what it could not get through product development and sales negotiations. When negotiations ended, UKnight's principal, Leonard Labriola, turned to his Plan B. He raised preposterous legal claims in an attempt to force the other side to pay money that is neither owed nor deserved. One of these claims is that the Order supposedly gave UKnight an oral contract in which it would, on a single day, endorse UKnight's services and thereby confer on UKnight a $100 million value. Notably, six years before filing suit, UKnight began secretly and illegally recording phone calls with the Order's employees. These recordings, however, reveal that UKnight knew it never had a contract with the Order. Even so, UKnight has deployed threats of negative publicity and a spurious challenge to the Order's tax-exempt status, and it has relied on litigation funding from anonymous investors – all in its attempt to shake down a windfall. But strip away its absurd claims, and this case boils down to a garden-variety business dispute brought by a website vendor that failed to close a business deal.

2.      Defendant denies the allegations of paragraph 2 of the Second Amended Complaint, and incorporates herein its statements in paragraph 1 above.

3.      Defendant denies the allegations of paragraph 3 of the Second Amended Complaint.

### Answer as to Parties

4.      Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 4 of the Second Amended Complaint and therefore denies the same.

5.      In response to paragraph 5 of the Second Amended Complaint, Defendant admits that it is a tax-exempt fraternal beneficiary society under 26 U.S.C. § 501(c)(8) and that its principal place of business is 1 Columbus Plaza, New Haven, Connecticut. Defendant denies any allegations inconsistent therewith, and denies all remaining allegations of paragraph 5, including footnote 1.

6.      Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 6 of the Second Amended Complaint and therefore denies the same.

## Answer as to Jurisdiction and Venue

7.      In response to paragraph 7 of the Second Amended Complaint, Defendant admits that this Court has subject matter jurisdiction over Plaintiff's claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"); denies that this Court has subject matter jurisdiction over Plaintiff's claim against Defendant David J. Kautter; and denies that this Court has supplemental jurisdiction over Plaintiff's state law claims. Defendant denies the remaining allegations of paragraph 7.

8.      Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 8 of the Second Amended Complaint and therefore denies the same.

9.      In response to paragraph 9 of the Second Amended Complaint, Defendant admits that this Court has general personal jurisdiction over Defendant, and denies all remaining allegations of paragraph 9.

10.     In response to paragraph 10 of the Second Amended Complaint, Defendant admits that venue is proper in this judicial district with respect to Plaintiff's RICO and state law claims. Defendant denies that venue is proper in this judicial district with respect to Plaintiff's claim against Defendant Kautter. Defendant denies all remaining allegations of paragraph 10.

### Answer as to General Allegations

11.     Defendant denies the allegations of paragraph 11 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled A ("KC Contracts With UKnight For Their Digital Platform").

12.     In response to paragraph 12 of the Second Amended Complaint, Defendant admits that it is the parent organization of a lodge system pursuant to 26 U.S.C. § 501(c)(8), that *Fortune* magazine ranks Defendant on its Fortune 1000 list, that Defendant has approximately 1.9 million members, and that it is engaged in charitable work. Defendant denies any allegations inconsistent therewith, and denies the remaining allegations of paragraph 12. Defendant affirmatively states that that the purposes for which the Knights of Columbus is formed, always consistent with Catholic values and doctrine, are the following: (a) through a system of subordinate councils, along with regional, national, and international convocations, to raise up, support and encourage a fraternity whose members are practical Catholics united by their faith and by the principles of charity, unity, fraternity, and patriotism; (b) through common worship, charitable works, meetings, and rites of initiation, to form its members in Catholic faith and virtue; (c) to render pecuniary aid to its members, their families, and beneficiaries of members and their families; (d) to render mutual aid and assistance to its sick, disabled, and needy members and their families; (e) to promote social and intellectual interaction among its members

and their families; (f) to promote and conduct educational, charitable, religious, social welfare, war relief, public relief, and other activities; and (g) to unite members in their Catholic identity and the practice of their Catholic faith.

13.     In response to paragraph 13 of the Second Amended Complaint, Defendant admits that it was founded in 1882. Defendant denies the remaining allegations of paragraph 13. Defendant affirmatively states that Defendant was chartered by the Connecticut General Assembly as a fraternal benefit society of Catholic men united in the Faith. Since its founding, Defendant has rendered aid to its members, their families, and beneficiaries of members and their families. Section 501(c)(8) of the Internal Revenue Code requires that fraternal benefit societies operate under a lodge system and provide for the payment of life, sickness, accident, or other benefits to the members of the society and/or their dependents. In this vein, Defendant operates through and maintains an active system of local and state subordinate councils that conduct extensive charitable and volunteer programs, and Defendant offers life insurance and other benefits to its members and their families residing in the United States and Canada. Defendant announced in 2016 $8.4 billion in sales and that it surpassed $100 billion of life insurance in force.

14.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 14 of the Second Amended Complaint and therefore denies the same.

15.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 15 of the Second Amended Complaint and therefore denies the same.

16.     Defendant admits that UKnight was invited to New Haven for meetings. Defendant denies the remaining allegations of paragraph 16 of the Second Amended Complaint.

17.     Defendant denies the allegations of paragraph 17 of the Second Amended Complaint.

18.     Defendant denies the allegations of paragraph 18 of the Second Amended Complaint.

19.     Defendant denies the allegations of paragraph 19 of the Second Amended Complaint.

20.     Defendant denies the allegations of paragraph 20 of the Second Amended Complaint.

21.     Defendant denies the allegations of paragraph 21 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled C ("KC Delays Announcement, But Makes Repeated Promises and Assurances").

22.     Defendant denies the allegations of paragraph 22 of the Second Amended Complaint.

23.     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 23 of the Second Amended Complaint and therefore denies the same.

24.     Defendant denies the allegations of paragraph 24 of the Second Amended Complaint.

25.     Defendant denies the allegations of paragraph 25 of the Second Amended Complaint.

26.     Defendant denies the allegations of paragraph 26 of the Second Amended Complaint.

27.     Defendant denies the allegations of paragraph 27 of the Second Amended Complaint.

28.     Defendant denies the allegations of paragraph 28 of the Second Amended Complaint.

29.     Defendant denies the allegations of paragraph 29 of the Second Amended Complaint.

30.     Defendant denies the allegations of paragraph 30 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled D ("Meanwhile, KC Conspires To Fraudulently Inflate Membership Numbers and Characteristics Of Its Insurance Risk Pool").

31.     Defendant denies the allegations of paragraph 31 of the Second Amended Complaint.

32.     Defendant denies the allegations of paragraph 32 of the Second Amended Complaint.

33.     Defendant denies the allegations of paragraph 33 of the Second Amended Complaint.

34.     Defendant denies the allegations of paragraph 34 of the Second Amended Complaint.

35.     Defendant denies the allegations of paragraph 35 of the Second Amended Complaint.

36.     Defendant denies the allegations of paragraph 36 of the Second Amended Complaint.

37.     Defendant denies the allegations of paragraph 37 of the Second Amended Complaint, including footnote 2.

38.     Defendant denies the allegations of paragraph 38 of the Second Amended Complaint.

39.     Defendant denies the allegations of paragraph 39 of the Second Amended Complaint.

40.     Defendant denies the allegations of paragraph 40 of the Second Amended Complaint.

41.     Defendant denies the allegations of paragraph 41 of the Second Amended Complaint.

42.     Defendant denies the allegations of paragraph 42 of the Second Amended Complaint.

43.     Defendant denies the allegations of paragraph 43 of the Second Amended Complaint, including subparagraphs a-e.

44.     Defendant denies the allegations of paragraph 44 of the Second Amended Complaint, including footnote 3.

45.     Defendant denies the allegations of paragraph 45 of the Second Amended Complaint.

46.     In response to paragraph 46 of the Second Amended Complaint, Defendant admits the allegations of footnote 4, and denies all remaining allegations of paragraph 46.

47.     Defendant denies the allegations of paragraph 47 of the Second Amended Complaint.

48.     Defendant denies the allegations of paragraph 48 of the Second Amended Complaint.

49.     Defendant denies the allegations of paragraph 49 of the Second Amended Complaint.

50.     Defendant denies the allegations of paragraph 50 of the Second Amended Complaint.

51.     Defendant denies the allegations of paragraph 51 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled E ("KC Breaches Agreement With UKnight And Steals Trade Secrets").

52.     Defendant denies the allegations of paragraph 52 of the Second Amended Complaint.

53.     Defendant denies the allegations of paragraph 53 of the Second Amended Complaint.

54.     Defendant denies the allegations of paragraph 54 of the Second Amended Complaint.

55.     Defendant admits that it retained Mr. Kinkade to evaluate the UKnight system. Defendant denies the remaining allegations of paragraph 55 of the Second Amended Complaint

56.     Defendant denies the allegations of paragraph 56 of the Second Amended Complaint.

57.     Defendant denies the allegations of paragraph 57 of the Second Amended Complaint.

58.     Defendant denies the allegations of paragraph 58 of the Second Amended Complaint.

59.     Defendant admits that Mr. Kinkade traveled to Dallas to meet with Mr. Clark. Defendant affirmatively states that Matthew St. John and Denise Serafini traveled to Dallas with Mr. Kinkade for the same purpose. Defendant denies the remaining allegations of paragraph 59 of the Second Amended Complaint.

60.     Defendant denies the allegations of paragraph 60 of the Second Amended Complaint.

61.     In response to paragraph 61 of the Second Amended Complaint, Defendant admits that Ms. Serafini retired on or about December 31, 2015, and Defendant affirmatively states that Mr. St. John's email speaks for itself. Defendant denies the remaining allegations of paragraph 61.

62.     Defendant admits that Defendant sent a request for proposal to potential vendors in April 2016. Defendant denies the remaining allegations of paragraph 62 of the Second Amended Complaint.

63.     Defendant denies the allegations of paragraph 63 of the Second Amended Complaint.

64.     Defendant denies the allegations of paragraph 64 of the Second Amended Complaint.

## Answer as to First Claim for Relief[1]

65.     In response to paragraph 65 of the Second Amended Complaint, Defendant incorporates all prior paragraphs of this Answer as if fully set forth herein.

66.     Defendant denies the allegations of paragraph 66 of the Second Amended Complaint.

67.     Defendant denies the allegations of paragraph 67 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled "The Knights of Columbus Enterprise."

68.     Defendant denies the allegations of paragraph 68 of the Second Amended Complaint.

69.     Defendant denies the allegations of paragraph 69 of the Second Amended Complaint.

70.     Defendant denies the allegations of paragraph 70 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled "The Insurance Fraud Enterprise."

71.     Defendant denies the allegations of paragraph 71 of the Second Amended Complaint.

72.     Defendant denies the allegations of paragraph 72 of the Second Amended Complaint.

---

[1] Contemporaneously with this Answer, Defendant is filing a Motion to Dismiss Plaintiff's First and Second Claims for Relief pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). By filing this Answer, Defendant does not waive any of its arguments in the Motion to Dismiss.

73.     Defendant denies the allegations of paragraph 73 of the Second Amended Complaint.

74.     Defendant denies the allegations of paragraph 74 of the Second Amended Complaint.

75.     Defendant denies the allegations of paragraph 75 of the Second Amended Complaint.

76.     Defendant denies the allegations of paragraph 76 of the Second Amended Complaint.

77.     Defendant denies the allegations of paragraph 77 of the Second Amended Complaint.

78.     Defendant denies the allegations of paragraph 78 of the Second Amended Complaint.

79.     Defendant denies the allegations of paragraph 79 of the Second Amended Complaint.

80.     Defendant denies the allegations of paragraph 80 of the Second Amended Complaint.

81.     Defendant denies the allegations of paragraph 81 of the Second Amended Complaint.

82.     Defendant denies the allegations of paragraph 82 of the Second Amended Complaint.

83.     Defendant denies the allegations of paragraph 83 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled A ("Extortion").

84.     Defendant admits that councils are required to pay per capita dues for all active members listed on the council's membership roster. Defendant denies the remaining allegations of paragraph 84 of the Second Amended Complaint.

85.     Defendant denies the allegations of paragraph 85 of the Second Amended Complaint.

86.     Defendant denies the allegations of paragraph 86 of the Second Amended Complaint.

87.     Defendant denies the allegations of paragraph 87 of the Second Amended Complaint.

88.     Defendant denies the allegations of paragraph 88 of the Second Amended Complaint.

89.     Defendant denies the allegations of paragraph 89 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled B ("Theft And Attempted Theft Of Trade Secrets").

90.     Defendant denies the allegations of paragraph 90 of the Second Amended Complaint.

91.     Defendant denies the allegations of paragraph 91 of the Second Amended Complaint.

92.     Defendant denies the allegations of paragraph 92 of the Second Amended Complaint.

93.     Defendant denies the allegations of paragraph 93 of the Second Amended Complaint.

94.     Defendant denies the allegations of paragraph 94 of the Second Amended Complaint.

95.     Defendant denies the allegations of paragraph 95 of the Second Amended Complaint.

96.     Defendant denies the allegations of paragraph 96 of the Second Amended Complaint.

97.     Defendant denies the allegations of paragraph 97 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled C ("Interstate Transport of Stolen Goods").

98.     Defendant denies the allegations of paragraph 98 of the Second Amended Complaint.

99.     Defendant denies the allegations of paragraph 99 of the Second Amended Complaint.

100.    Defendant denies the allegations of paragraph 100 of the Second Amended Complaint.

101.    Defendant denies the allegations of paragraph 101 of the Second Amended Complaint.

102.    Defendant denies the allegations of paragraph 102 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled D ("Wire Fraud").

103.    Defendant denies the allegations of paragraph 103 of the Second Amended Complaint.

104.    Defendant denies the allegations of paragraph 104 of the Second Amended Complaint, including subparagraphs a-o.

105.    Defendant denies the allegations of paragraph 105 of the Second Amended Complaint.

106.    Defendant denies the allegations of paragraph 106 of the Second Amended Complaint, including subparagraphs a-g.

107.    Defendant denies the allegations of paragraph 107 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled E ("Receipt of Funds Obtained by Fraud").

108.    Defendant denies the allegations of paragraph 108 of the Second Amended Complaint.

109.    Defendant denies the allegations of paragraph 109 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled F ("Financial Institution Fraud").

110.    Defendant denies the allegations of paragraph 110 of the Second Amended Complaint.

111.     Defendant denies the allegations of paragraph 111 of the Second Amended Complaint.

112.     Defendant denies the allegations of paragraph 112 of the Second Amended Complaint.

113.     Defendant denies the allegations of paragraph 113 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled G ("Witness Tampering").

114.     Defendant denies the allegations of paragraph 114 of the Second Amended Complaint.

115.     Defendant denies the allegations of paragraph 115 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled H ("Racketeering Acts Comprise A Pattern Of Racketeering Activity").

116.     Defendant denies the allegations of paragraph 116 of the Second Amended Complaint.

117.     Defendant denies the allegations of paragraph 117 of the Second Amended Complaint.

118.     Defendant denies the allegations of paragraph 118 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled I ("Proximate Injury to Plaintiff UKnight").

119.     Defendant denies the allegations of paragraph 119 of the Second Amended Complaint.

## Answer as to Second Claim for Relief[2]

120.    In response to paragraph 120 of the Second Amended Complaint, Defendant incorporates all prior paragraphs of this Answer as if fully set forth herein.

121.    Defendant denies the allegations of paragraph 121 of the Second Amended Complaint. Defendant also denies the allegations of the preceding heading labeled A ("UKnight Has Standing To Bring This Claim For Relief").

122.    Defendant denies the allegations of paragraph 122 of the Second Amended Complaint.

123.    Defendant denies the allegations of paragraph 123 of the Second Amended Complaint.

124.    Defendant denies the allegations of paragraph 124 of the Second Amended Complaint.

125.    Defendant denies the allegations of paragraph 125 of the Second Amended Complaint.

126.    Defendant denies the allegations of paragraph 126 of the Second Amended Complaint.

127.    Defendant denies the allegations of paragraph 127 of the Second Amended Complaint.

128.    Defendant denies the allegations of paragraph 128 of the Second Amended Complaint.

---

[2] Contemporaneously with this Answer, Defendant is filing a Motion to Dismiss Plaintiff's First and Second Claims for Relief pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). By filing this Answer, Defendant does not waive any of its arguments in the Motion to Dismiss.

129.     Defendant denies the allegations of paragraph 129 of the Second Amended Complaint.

130.     Defendant denies the allegations of paragraph 130 (numerated as C) of the Second Amended Complaint. Defendant also denies the allegations of the preceding headings labeled B ("KC's 501(c)(8) Status Should Be Revoked") and i ("KC does not meet the 'common tie' requirement for a fraternal benefit society under § 501(c)(8).").

131.     Defendant denies the allegations of paragraph 131 of the Second Amended Complaint.

132.     Defendant denies the allegations of paragraph 132 of the Second Amended Complaint.

133.     Defendant denies the allegations of paragraph 133 of the Second Amended Complaint, including subparagraphs a-d.

134.     Defendant denies the allegations of paragraph 134 of the Second Amended Complaint.

135.     Defendant denies the allegations of paragraph 135 of the Second Amended Complaint. Defendant also denies the allegations of the preceding headings labeled ii ("KC impermissibly provides benefits and services outside its purported fraternity in violation of § 501(c)(8) and the Commerciality Doctrine.").

136.     Defendant denies the allegations of paragraph 136 of the Second Amended Complaint.

137.     Defendant denies the allegations of paragraph 137 of the Second Amended Complaint.

138.     Defendant denies the allegations of paragraph 138 of the Second Amended Complaint.

139.     Defendant denies the allegations of paragraph 139 of the Second Amended Complaint.

140.     Defendant denies the allegations of paragraph 140 of the Second Amended Complaint.

141.     Defendant denies the allegations of paragraph 141 of the Second Amended Complaint.

142.     Defendant denies the allegations of paragraph 142 of the Second Amended Complaint.

143.     Defendant denies the allegations of paragraph 143 of the Second Amended Complaint. Defendant also denies the allegations of the preceding headings labeled iii ("KC's executive's compensation constitutes impermissible private inurement.").

144.     Defendant denies the allegations of paragraph 144 of the Second Amended Complaint.

145.     Defendant denies the allegations of paragraph 145 of the Second Amended Complaint.

146.     Defendant denies the allegations of paragraph 146 of the Second Amended Complaint.

147.     Defendant admits that Carl Anderson is the Supreme Knight of Defendant. Defendant denies the remaining allegations of paragraph 147 of the Second Amended Complaint.

148.    Defendant denies the allegations of paragraph 148 of the Second Amended Complaint.

149.    Defendant lacks knowledge or information sufficient to form a belief about the compensation of officers of other organizations, and therefore denies the same, and denies the remaining allegations of paragraph 149 of the Second Amended Complaint.

150.    Defendant lacks knowledge or information sufficient to form a belief about the compensation of officers of other organizations and about the number of employees of such organizations, and therefore denies the same, and denies the remaining allegations of paragraph 150 of the Second Amended Complaint.

151.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding Goodwill Industries, and therefore denies the same, and denies the remaining allegations of paragraph 151 of the Second Amended Complaint.

152.    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 152 of the Second Amended Complaint and therefore denies the same.

153.    Defendant denies the allegations of paragraph 153 of the Second Amended Complaint, including the allegations in footnote 6.

154.    Defendant denies the allegations of paragraph 154 of the Second Amended Complaint.

155.    Defendant denies the allegations of paragraph 155 of the Second Amended Complaint.

156.     Defendant denies the allegations of paragraph 156 of the Second Amended Complaint.

157.     Defendant denies the allegations of paragraph 157 of the Second Amended Complaint.

158.     Defendant denies the allegations of paragraph 158 of the Second Amended Complaint.

**<u>Answer as to Third Claim for Relief</u>**

159.     In response to paragraph 159 of the Second Amended Complaint, Defendant incorporates all prior paragraphs of this Answer as if fully set forth herein.

160.     Defendant denies the allegations of paragraph 160 of the Second Amended Complaint.

161.     Defendant denies the allegations of paragraph 161 of the Second Amended Complaint.

162.     Defendant denies the allegations of paragraph 162 of the Second Amended Complaint.

163.     Defendant denies the allegations of paragraph 163 of the Second Amended Complaint.

164.     Defendant denies the allegations of paragraph 164 of the Second Amended Complaint.

165.     Defendant denies the allegations of paragraph 165 of the Second Amended Complaint.

**Answer as to Fourth Claim for Relief**

166.   In response to paragraph 166 of the Second Amended Complaint, Defendant incorporates all prior paragraphs of this Answer as if fully set forth herein.

167.   Defendant denies the allegations of paragraph 167 of the Second Amended Complaint, including subparagraphs a-f.

168.   Defendant denies the allegations of paragraph 168 of the Second Amended Complaint.

169.   Defendant denies the allegations of paragraph 169 of the Second Amended Complaint.

170.   Defendant denies the allegations of paragraph 170 of the Second Amended Complaint.

**Answer as to Fifth Claim for Relief**

171.   In response to paragraph 171 of the Second Amended Complaint, Defendant incorporates all prior paragraphs of this Answer as if fully set forth herein.

172.   Defendant denies the allegations of paragraph 172 of the Second Amended Complaint.

173.   Defendant denies the allegations of paragraph 173 of the Second Amended Complaint.

174.   Defendant denies the allegations of paragraph 174 of the Second Amended Complaint.

175.   Defendant denies the allegations of paragraph 175 of the Second Amended Complaint.

176.    Defendant denies the allegations of paragraph 176 of the Second Amended Complaint.

## Answer as to Sixth Claim for Relief

177.    In response to paragraph 177 of the Second Amended Complaint, Defendant incorporates all prior paragraphs of this Answer as if fully set forth herein.

178.    Defendant denies the allegations of paragraph 178 of the Second Amended Complaint.

179.    Defendant denies the allegations of paragraph 179 of the Second Amended Complaint, including subparagraphs a-d.

180.    Defendant denies the allegations of paragraph 180 of the Second Amended Complaint.

## Answer as to Seventh Claim for Relief

181.    In response to paragraph 181 of the Second Amended Complaint, Defendant incorporates all prior paragraphs of this Answer as if fully set forth herein.

182.    Defendant denies the allegations of paragraph 182 of the Second Amended Complaint.

183.    Defendant denies the allegations of paragraph 183 of the Second Amended Complaint.

184.    Defendant denies the allegations of paragraph 184 of the Second Amended Complaint.

185.    Defendant denies the allegations of paragraph 185 of the Second Amended Complaint.

186.    Defendant denies the allegations of paragraph 186 of the Second Amended Complaint.

187.    Defendant denies the allegations of paragraph 187 of the Second Amended Complaint.

188.    Defendant denies the allegations of paragraph 188 of the Second Amended Complaint.

### Answer as to Eighth Claim for Relief

189.    In response to paragraph 189 of the Second Amended Complaint, Defendant incorporates all prior paragraphs of this Answer as if fully set forth herein.

190.    Defendant denies the allegations of paragraph 190 of the Second Amended Complaint.

191.    Defendant denies the allegations of paragraph 191 of the Second Amended Complaint.

192.    Defendant denies the allegations of paragraph 192 of the Second Amended Complaint.

193.    Defendant denies the allegations of paragraph 193 of the Second Amended Complaint.

### Answer as to Relief Requested

194.    The averments of the Second Amended Complaint under the heading "Relief Requested" state legal conclusions as to which no response is required. To the extent a response is required, Defendant denies the averments thereunder, and denies that Plaintiff is entitled to any relief whatsoever.

## General Denial

195.    Defendant denies each and every allegation, averment, statement, and conclusion of law contained in the Second Amended Complaint which is not specifically admitted in this Answer.

## Separate and Affirmative Defenses

196.    The Second Amended Complaint fails to state a claim upon which relief can be granted.

197.    Plaintiff lacks standing to bring its claims because it has not suffered the requisite injury in fact, because the alleged conduct is not fairly traceable to the conduct of the Defendant, and because Plaintiff's alleged injuries are not redressable by a favorable decision.

198.    Plaintiff's claims are barred by the First Amendment, including the right of association, the Free Exercise Clause, the Establishment Clause, and the doctrine of religious autonomy.

199.    Plaintiff's claims are barred in whole or in part by a failure of consideration.

200.    Plaintiff's claims are barred, in whole or in part, because its alleged damages, if any, were caused by Plaintiff's own acts or omissions, or the acts or omissions of third parties over whom Defendant had no control or right of control.

201.    Plaintiff's claims are barred in whole or in part by consent, waiver, estoppel, ratification and/or acquiescence.

202.    Plaintiff's claims are barred in whole or in part by the applicable statutes of limitation and statutes of repose.

203.     Plaintiff's claims are barred in whole or in part by the Colorado Statute of Frauds, C.R.S. § 38-10-112, and/or the Connecticut Statute of Frauds, Conn. Gen. Stat. § 52-550.

204.     Plaintiff's claims are barred in whole or in part because Plaintiff does not own any trade secrets.

205.     Plaintiff's claims are barred in whole or in part because Plaintiff did not make reasonable efforts to maintain the secrecy of its alleged trade secrets.

206.     Plaintiff's claims are barred in whole or in part by the economic loss rule.

207.     Plaintiff failed to take reasonable steps under the circumstances to minimize or mitigate its alleged damages or losses, if any have been sustained.

208.     Plaintiff's claims are barred in whole or in part because the damages it seeks are speculative and cannot be recovered as a matter of law.

209.     Defendant reserves the right to add additional affirmative defenses as they become known through the course of discovery or otherwise.

WHEREFORE, Defendant Knights of Columbus prays that judgment enter in its favor and against Plaintiff on all claims set forth in the Second Amended Complaint, that it be awarded its attorneys' fees and costs incurred herein, and for such other and further relief as this Court deems just and proper.

## COUNTERCLAIM

Defendant / Counterclaim Plaintiff Knights of Columbus, by its attorneys, alleges as follows for its Counterclaim against Plaintiff / Counterclaim Defendant LiST Interactive, Ltd. d/b/a UKnight Interactive, and against additional Counterclaim Defendants Leonard S. Labriola, WebsInc.com, Inc., Stephen S. Michlik, Jonathan S. Michlik, and Terry A. Clark:

## Nature of Counterclaim

1.      This Counterclaim arises out of the Counterclaim Defendants' improper, infringing, and deceptive use of the federally protected trademarks of the Knights of Columbus (hereinafter the "Order"). The Order seeks appropriate monetary and equitable relief for the Counterclaim Defendants' registration and use of <KOFCKnights.org> and other domain names that infringe the Order's marks, as well as use of the protected marks on websites promoting the Counterclaim Defendants' own products and services. The Counterclaim Defendants are liable to the Order for trademark infringement, false designation of origin, dilution, and cybersquatting. The Order also asserts a counterclaim arising out of the surreptitious audio recording of phone conversations by Leonard Labriola, Terry Clark, and LiST Interactive, Ltd. d/b/a UKnight Interactive, and a counterclaim for civil conspiracy.

## Parties

2.      Founded in 1882, the Order is a Connecticut non-stock corporation with a principal place of business at 1 Columbus Plaza, New Haven, Connecticut 06510.

3.      Founded on June 8, 2011, Plaintiff / Counterclaim Defendant LiST Interactive, Ltd. d/b/a UKnight Interactive is a Colorado limited liability company with a principal place of business at 1434 Spruce Street, #100, Boulder, Colorado 80302.

4.      Counterclaim Defendant Leonard S. Labriola is a member of LiST Interactive, Ltd. and a Colorado resident with an address at 179 Salina Street, Lafayette, Colorado 80026.

5.      Counterclaim Defendant WebsInc.com, Inc. is a Texas corporation with a registered address at 3321 Jomar Dr., Plano, TX 75075. Upon information and belief, WebsInc.com, Inc. no longer has a presence at this address.

6.      Counterclaim Defendant Stephen ("Steve") S. Michlik is the President, Vice President, Secretary, and Treasurer of WebsInc.com; a former member of LiST Interactive, Ltd.; and a Texas resident with an address at 809 S. Lamar Blvd., Apt. 216, Austin, Texas 78704. Upon information and belief, Steve Michlik is a manager of, or retains some ownership interest or other stake in, LiST Interactive, Ltd.

7.      Counterclaim Defendant Jonathan S. Michlik is Steve Michlik's son; a member of LiST Interactive, Ltd.; and a Texas resident with an address at 11215 Thorny Brook Trail, Austin, Texas 78750.

8.      Counterclaim Defendant Terry A. Clark is a member of LiST Interactive, Ltd.; a web project manager/developer for WebsInc.com, Inc.; and a Texas resident with an address at 5335 Bent Tree Forrest Drive, Apt. 204, Dallas, Texas 75248.

9.      Collectively, LiST Interactive, Ltd., Leonard Labriola, WebsInc.com, Inc., Steve Michlik, Jonathan Michlik and Terry Clark do business as "UKnight," "UKnight Interactive," and "UKnight IA," and are hereafter referred to as "UKnight."

10.     This Counterclaim arises out of UKnight's infringement of the Order's federally registered and common law trademarks and other actions by UKnight that are likely to cause confusion as to whether UKnight or its goods, services, or commercial activities originate from or are affiliated, connected, sponsored, or approved by the Order, when in fact they are not.

11.     From its beginnings, UKnight determined that it would represent itself as affiliated with and endorsed by the Order, regardless of whether it actually was. It was not. To falsely convey the Order's imprimatur, UKnight misappropriated and continues to

misappropriate the Order's federally registered trademarks to brand itself, its services, and its websites, in violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*

12.     Upon information and belief, Leonard Labriola, Steve Michlik, Jonathan Michlik, and Terry Clark have personally directed the infringing activities that are the subject of this Counterclaim, with knowledge and willful disregard for the Order's rights.

13.     Upon information and belief, LiST Interactive, Ltd., WebsInc.com, Inc., Leonard Labriola, Steve Michlik, Jonathan Michlik and Terry Clark have conspired to commit UKnight's unlawful overt actions of infringement.

14.     WebsInc.com, Inc. and Steve Michlik are the listed registrants of domain names that form the basis for some of the Order's cybersquatting claims. WebsInc.com, Inc. also claims that it created and maintains UKnight's primary website at <KOFCKnights.org>.

## Jurisdiction and Venue

15.     This Court has personal jurisdiction over LiST Interactive, Ltd. and Leonard Labriola.

16.     This Court has personal jurisdiction over WebsInc.com, Inc., Steve Michlik, Jonathan Michlik and Terry Clark because, among other reasons, each conspired with Colorado residents LiST Interactive, Ltd. and Leonard Labriola to commit the acts of infringement that form the basis for this Counterclaim.

17.     Jonathan Michlik and Terry Clark are current members of LiST Interactive, Ltd., a Colorado limited liability company that is headquartered in Colorado. Steve Michlik is a former member of LiST Interactive, Ltd. and, upon information and belief, is a manager or, or maintains some form of ownership or other interest, in LiST Interactive, Ltd.

18.     Upon information and belief, "LiST" in the Colorado entity's name is derived from the first names of **L**eonard Labriola, **S**teve Michlik, and **T**erry Clark.

19.     Steve Michlik, Jonathan Michlik, and Terry Clark each purposefully availed himself of the benefits and protections of membership in a Colorado limited liability company, namely LiST Interactive, Ltd., and used that LLC to initiate the present action in this Court.

20.     Upon information and belief, Steve Michlik, Jonathan Michlik, and Terry Clark each approved the initiation and prosecution of this action in Colorado by Plaintiffs LiST Interactive, Ltd. and Leonard Labriola.

21.     This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1338(a), (b), 28 U.S.C. § 1367, and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over the Order's state law counterclaims as provided by 28 U.S.C. § 1367.

22.     Venue properly lies in this judicial district under 28 U.S.C. § 1391(b) and (c).

## **General Allegations**

23.     The Order is a fraternal benefits society (sometimes called a fraternal beneficiary society), and recognized as such under 26 U.S.C. § 501(c)(8). The Order was founded by Father Michael J. McGivney in New Haven, Connecticut in 1882.

24.     Since its founding, the Order has developed into the largest and most prominent Catholic lay organization in the world, comprising approximately 1.9 million members ("Members") spread throughout the United States, Canada, the Philippines, Mexico, Poland, the Dominican Republic, Puerto Rico, Panama, the Bahamas, the Virgin Islands, Cuba, Guatemala, Guam, Saipan, Lithuania, Ukraine, and South Korea.

25.     The Order provides assistance to the sick, elderly, disabled, needy, and homeless. In 2016, the Order donated more than $177.5 million and over seventy-five million service hours

to charitable causes. The Order has donated more than $1.6 billion over the past decade. The Order additionally provides fraternal benefits such as life insurance to its members and their families in the United States and Canada.

26.     The Order charters subordinate units to carry out its charitable efforts and to foster the fraternal bonds between Members. Subordinate units comprise more than seventy-five State Councils, approximately 3,300 District Councils and 4th Degree Provinces under the guidance of a State Council, and approximately 15,000 Councils and 3,000 Assemblies under the guidance of a District Council. There are also Chapters approved by the Board of Directors and consisting of three or more councils in a neighboring area. Collectively, these subordinate units are hereafter referred to as "Councils."

27.     Councils are the basic unit of the Order. All Members belong to a council. The *Charter Constitution and Laws of the Knights of Columbus* state that there are subordinate state or territorial councils in every jurisdiction where the Order is established. Each state council is divided into districts, which are groupings of several councils. The councils are the basic unit of the Order. Consistent with the principles of the Order, councils evaluate the needs of their communities and implement those programs and activities that are most needed in the local area. (There are also local units known as Fourth Degree assemblies.) The councils are unincorporated associations that exist under Charters issued to them from the Order's Supreme Council. In the United States, these unincorporated associations lack "independent continuity of existence" and, as a result, are not eligible to be incorporated or hold title to real estate. Because they hold charters from the Supreme Council, they are subject to dissolution or merger according to the laws of the Order. Subordinate councils may promulgate for their own government such bylaws, rules, and regulations as they may find necessary for the proper conduct of their affairs; provided

that no bylaws, rules, and regulations shall be enacted which shall conflict with or be in opposition to or in any way impair the enforcement of the constitution, rules, and regulations made or enacted, or which may be made and enacted by the Supreme Council or Board of Directors of the Order. Such bylaws shall not become operative until approved by the Supreme Advocate, from whose decision an appeal may be taken to the Board of Directors.

28.      Spurred by Father McGivney's mission to care for widows and orphans and committed to his vision of protecting the financial future of Catholic families, the Order offers life insurance, annuity, and long-term care programs to its Members, their spouses, and eligible dependents. The Order's financial strength and stability is marked by its $1.95 billion surplus, which provides rock-solid protection for policyholders.

29.      The Order offers its life-insurance, annuity, and long-term care fraternal benefit products through its 1,400 independent insurance agents ("Agents"), each of whom is also a Member.

30.      The Order's official website is located at the domain name <KOFC.org>, registered April 13, 1996. Below is a screenshot of the homepage at <KOFC.org>.



31.     Over the last twelve months, the website at <KOFC.org> has received millions of visitors, and thousands of visitors per day.

32.     Leonard Labriola and Steve Michlik are Members of the Order.

33.     Steve Michlik is also an Agent. He served as a field agent from December 2008 to July 2014. Beginning in July 2014, he became a general agent, responsible for recruiting, training, and leading the Order's field agents.

34.     Steve Michlik's LinkedIn profile describes the Order's insurance products as "financially strong and ethically sound."

## I.      Knights of Columbus Trademark Rights

35.     The Order owns two valid, subsisting and incontestable federal trademark registrations (Nos. 1596950 and 1634365) for the KNIGHTS OF COLUMBUS® word mark for "indicating membership in an organization which is a fraternal benefits society that promotes volunteerism, charitable contributions, and insurance services" and "insurance underwriting services and charitable services in the field of monetary donations and charitable fund raising services for the needy, elderly, homeless, mentally handicapped, physically handicapped, widows, orphans, community projects, hospitals and churches," respectively. The filing dates for these registrations are June 28, 1989 and May 18, 1990, also respectively.

36.     The Order also owns a valid and subsisting federal trademark registration (No. 4178223) for the K OF C® word mark for "insurance services, namely, underwriting, issuance and administration of life, accident and health, disability, long-term care, income loss and income protection insurance and annuities insurance; charitable services, namely, organizing fund raising projects and events to raise funds in the fields of financial support and assistance to needy, elderly, homeless, mentally handicapped or physically handicapped persons, widows and

orphans, religious efforts, community projects and programs, hospitals and churches, disaster relief efforts and programs, and scholarships and educational funds for students enrolled in degree programs; charitable fund raising to support needy, elderly, homeless, mentally handicapped or physically handicapped person." The filing date for this registration is August 25, 2011.

37. The K OF C mark also forms part of this official emblem of the Knights of Columbus:



(the "Emblem"). As the lone literal element of the Emblem, the K OF C mark is the most prominent portion of the Emblem.

38. The Order owns two valid, subsisting and incontestable federal trademark registrations (Nos. 1589315 and 1589536) for the Emblem for the same services covered by the Order's registrations for the KNIGHTS OF COLUMBUS word mark. The filing date for these registrations is July 5, 1989.

39. Pursuant to 15 U.S.C. § 1057(c), the legal presumption of the Order's exclusive nationwide rights in the KNIGHTS OF COLUMBUS mark, K OF C mark, and the Emblem (the "Marks") dates back to June 28, 1989, August 25, 2011, and July 5, 1989, respectively.

40. The Order's registrations for the KNIGHTS OF COLUMBUS mark and the Emblem are incontestable pursuant to 15 U.S.C. § 1065. Accordingly, the registrations serve as

conclusive evidence of the Order's ownership and exclusive rights to use the KNIGHTS OF COLUMBUS mark and the Emblem in commerce.

41.     The Marks are inherently distinctive and form an essential part of the Order's identity. The Order has continuously used the Marks since at least as early as 1883, for the KNIGHTS OF COLUMBUS mark, or 1884, for the K OF C mark and the Emblem. Thus, the Order's common law rights in the Marks were first established between 133 and 134 years ago.

42.     Through more than 130 years of widespread and continuous use, the Marks have become well-known throughout the U.S. and around the world as exclusive identifiers of the Order and its products and services. The Order has acquired considerable goodwill in the Marks.

43.     Therefore, in addition to registered rights in the Marks, the Order has secured exceptionally strong common law rights in the Marks.

## II.     Use of the Marks by Members, Agents, and Councils

44.     Use of the Marks by the Order's Members, Agents, and Councils is governed by various laws and policies promulgated by the Order.

45.     Members, Agents and Councils are prohibited from modifying the Marks.

46.     Members may use the Marks only in connection with the approved activities of Councils or the Order, namely approved charitable and fraternal activities.

47.     Members are not authorized to register domain names containing the Marks.

48.     The Order's membership application form is known as Form 100. As a matter of course, Form 100 is signed by all Members.

49.     Leonard Labriola and Steve Michlik each signed Form 100. By doing so, each individual expressly agreed to "uphold the charter, constitution and laws of the Knights of Columbus and any of its councils in which I hold membership."

50.     The Order's *Charter, Constitution, and Laws* prohibit Members from "[u]sing the name of Knights of Columbus or his membership in the Order in connection with any business, or social, or other enterprise, without permission of the Board of Directors."

51.     Further, the Order's written policies state that "[p]rotecting the Knights of Columbus brand is one of the most important responsibilities of every Knights of Columbus officer and member."

52.     Agents may only use the Marks to promote K of C's financial products and services, and may not use the Marks for any other personal or financial reason.

53.     Councils may use the Marks in association with the purposes and services of the Order and for "Ordinary Fraternal Use" only.

54.     "Ordinary Fraternal Use" is defined by the Order as use by a Council with the objective to: increase public recognition of the Order; promote charitable, fundraising, or civic activity; enhance the fraternal bond among Members of the Council; or cultivate good will among Members of the Council and the Catholic parish(es) directly served by the Council.

55.     Ordinary Fraternal Use includes use of the Marks on banners, flyers, stationery, websites, forms, brochures, newsletters and annual reports, but "[u]se of the Marks to promote any private business interest, personal gain, or political cause NEVER constitutes 'Ordinary Fraternal Use'" (emphasis in original).

56.     Councils and Agents may not sublicense the Marks, but may retain third-party contractors to create banners, flyers, stationery, websites, et al. solely for them for their exclusive use in connection with the purposes permitted by the Order. Thus, Councils and Agents cannot grant permission to use the Marks within any source-indicative designation, including trademarks, service marks, trade names or domain names; in connection with any private

business interest; or in any other manner that prevents the Order from exercising full authority and control over use of the Marks.

### III.    UKnight's Unauthorized Use of the Marks

57.     UKnight alleges that it began offering website design, development and maintenance services to Councils in 2009, even though LiST Interactive, Ltd. was not formed until June 8, 2011.

58.     From its infancy, UKnight sought to improperly align itself with the Order for financial gain.

59.     Steve Michlik of WebsInc.com, Inc. registered the domain name <KOFCKnights.org> on February 1, 2010, eighteen months prior to UKnight's first alleged contact with the Order in August 2011.

60.     UKnight has utilized <KOFCKnights.org> for its primary website from at least as early as April 2011 until present.

61.     UKnight constructed <KOFCKnights.org> by adding the first term of the KNIGHTS OF COLUMBUS mark to the K OF C mark to form a domain name that is uniquely indicative of Knights of Columbus and its products and services, not UKnight or its goods and services.

62.     Upon information and belief, UKnight adopted the generic top-level domain (gTLD) <.org> for its primary website to mimic the Order's domain name for its official website, namely <KOFC.org>.

63.     Indeed, nearly all domain names owned by UKnight utilize the <.org> gTLD, despite the fact that the gTLD is intended for and most commonly used by nonprofit entities such as the Order. UKnight is for-profit enterprise.

64.     Upon information and belief, the archived screenshot below is a screenshot of the homepage at <KOFCKnights.org> as it appeared on April 11, 2011. Again, this is prior to UKnight's first alleged contact with the Order.



The Marks dominate the page, particularly compared against the U KNIGHT name. Even the copyright notice on the site is "Copyright © 2009 – 2011 Knights of Columbus."

65.     Since introduction of the website at <KOFCKnights.org>, approximately 1,000 Councils and some number of Agents have retained UKnight to design, develop, and maintain websites for Ordinary Fraternal Use and/or promotion of the Order's financial products and services by those Councils and Agents.

66.     Upon information and belief, all of these sites are located on <KOFCKnights.org> and use the same basic template design. Below is a screenshot of a typical UKnight-designed Council website.



67.     UKnight's template consists of a modified dark blue Emblem against a lighter blue background with an overlay showing the Emblem and KNIGHTS OF COLUMBUS mark in the header, with links to the Order's and Pope Francis's official Twitter accounts directly below, and the Council number, name and location directly to the right along with a link to the "Council Market Center." The title bar (About…Why Join?...) and side bar (Home…Event Calendar…) are also part of UKnight's template, along with the image scroll and "Council Announcements" Section.

68.     While Councils and Agents may use the Marks on websites when the use is solely Ordinary Fraternal Use or solely in promotion of the Order's financial products and services, Councils and Agents may not modify the Marks.

69.     Additionally, the Order strictly prohibits any use of the Marks in connection with private business interests or personal gain.

70.     Upon information and belief, Leonard Labriola, Steven Michlik, and Terry Clark knew of these restrictions and prohibitions on use of the Marks.

71.     Yet UKnight, which is neither a Council nor an Agent, has used the Marks in direct promotion of UKnight's own products and services, including within domain names and on websites that UKnight has developed for Councils and Agents that have *not* retained UKnight. Hereafter, these websites are referred to as the "Shadow Sites."

**A.     UKnight's Use of the Marks on its Websites**

72.     As shown in the screenshot below, UKnight utilizes the Emblem as the "favicon" for its primary website, namely the homepage located at <KOFCKnights.org>.



73.     UKnight's "mobile" website at <KOFCKnights.org/mobile>, accessible from <KOFCmobile.org>, <KOFCmobile.net> and <KOFCmobile.info>, also utilizes the Emblem as the favicon and prominently features the Emblem. A screenshot of UKnight's mobile site is below.



74.     UKnight falsely claims on both its primary and mobile websites that "UKNIGHT INTERACTIVE [IS] THE COMPREHENSIVE WEB SOLUTION FOR THE KNIGHTS OF COLUMBUS."

75.     UKnight also claims in its Terms of Use Agreement that "'KofCKnights.org' and others are our service marks or registered service marks or trademarks." Yet UKnight cannot have any trademark rights in KOFCKNIGHTS.ORG because the designation is the Order's K OF C mark combined with the term KNIGHTS, which is the first term of the Order's famous KNIGHTS OF COLUMBUS mark and the term represented by the letter "K" in the K OF C mark.

76.     UKnight's use of KOFCKNIGHTS.ORG does not grant UKnight trademark rights in the designation. To the contrary, UKnight's use and claim of rights in KOFCKNIGHTS.ORG is a deliberate infringement of the Order's rights in the Marks.

**B.     UKnight's Use of the Marks on the Shadow Sites**

77.     Upon information and belief, all of the Shadow Sites are located on the domain name <KOFCKnights.org>.

78.    UKnight uses the same template for the Shadow Sites that it uses for the sites it is retained to design for use by Councils and Agents. Below is a screenshot of a typical Shadow Site, this one for the Colorado State Council.



79.    The Shadow Sites utilize the Emblem as the favicon for the websites, alongside the mark KNIGHTS OF COLUMBUS for the page title. The Shadow Sites also use the modified Emblem background used within UKnight's regular template. The Shadow Sites lack the customizable content of legitimate Council and Agent websites. Without a legitimate client, there is no one to customize the content.

80.    The Shadow Sites contain no disclaimers of affiliation with the Order or the applicable Council. Instead, the disclaimer at the bottom of the Shadow Sites falsely claims that "[t]he words 'Knights of Columbus' and the Knights of Columbus emblem are the exclusive property of and trademarks registered by the Knights of Columbus, *used herein with permission*" (emphasis added). The Order has never given such permission.

81.     UKnight's Shadow Site for a given Council often competes in search engine results with the Council's official website, misdirecting Internet users seeking the Council's official website or the Order's official website to the associated unauthorized UKnight Shadow Site.

82.     UKnight's Shadow Sites are a readymade good, designed for use by *UKnight* to promote *UKnight's* products and services for sale to the consuming public and in particular the corresponding Council, without any prior authorization from that Council or the Order.

83.     UKnight has created Shadow Sites for at least forty-seven of the Order's seventy-five State Councils. Upon information and belief, the exact number of Shadow Sites is much higher.

## C.     UKnight's Use of the Marks Within Domain Names

84.     Based on current Whois registrant records for <KOFCKnights.org>, Domains By Proxy, LLC is the registrant (owner) of the domain name.

85.     Domains By Proxy is not the true registrant of <KOFCKnights.org>, but a proxy service retained by UKnight to shield its identity as the registrant (owner) of the domain name. Based on archived Whois records, the true registrant (owner) of <KOFCKnights.org> is Steve Michlik of WebsInc.com.

86.     UKnight is also the registrant (owner) of at least the following thirty-three additional domain names that include the Order's federally registered K OF C mark:

1) KOFC13174.org (Registered January 10, 2013)
2) KOFC6966.org (Registered October 10, 2012)
3) KOFC13221.org (Registered March 28, 2012)
4) KOFC-6065.org (Registered August 16, 2010)
5) KOFC11937.org (Registered May 4, 2011)
6) KOFC13408.org (Registered February 16, 2010)
7) KOFC14810.org (Registered February 16, 2010)

8)   KOFC7850.org (Registered February 16, 2010)
9)   KOFC8895.org (Registered February 16, 2010)
10) KOFC8954.org (Registered March 9, 2011)
11) KOFC786.org (Registered April 5, 2015)
12) KOFC5237.org (Registered July 15, 2011)
13) KOFCassembly2266.org (Registered January 17, 2013)
14) KOFCetx.org (Registered February 1, 2013)
15) KOFCalagency.com (Registered October 10, 2012)
16) KOFCsticeagency.com (Registered March 19, 2013)
17) KOFChuardagency.com (Registered May 16, 2013)
18) KOFCmarloweagency.com (Registered January 16, 2013)
19) KOFCstackowiczagency.com (Registered June 6, 2013)
20) KOFCtnagency.com (Registered September 27, 2012)
21) KOFCviscardi.com (Registered February 20, 2013)
22) KOFCagent.org (Registered August 12, 2009)
23) rocKOFC.com (Registered May 21, 2013)
24) KOFCfortworth.org (Registered May 11, 2010)
25) KOFCtexas.com (Registered July 14, 2009)
26) KOFCtexas.org (Registered July 14, 2009)
27) KOFCtx.org (Registered October 19, 2012)
28) KOFCagents.org (Registered June 6, 2013)
29) KOFCcouncils.net (Registered June 6, 2013)
30) KOFCcouncils.org (Registered June 6, 2013)
31) KOFCmobile.info (Registered April 23, 2013)
32) KOFCmobile.net (Registered April 23, 2013)
33) KOFCmobile.org (Registered April 23, 2013)

(collectively with <KOFCKnights.org>, the "Domain Names").

87.     Thirteen of the Domain Names are registered to Steve Michlik of WebsInc.com.

88.     The remaining twenty-one of the Domain Names are registered to Leonard Labriola of "UKnight IA."

89.     The earliest of the Domain Names were registered on July 14, 2009, exactly 125 years after the Order first used the K OF C mark, and thirteen years after the registrations for the K OF C and the Emblem achieved incontestable status. Twenty-two of the Domain Names were registered after the filing date for the Order's registration for the K OF C word mark.

90.     The Domain Names take the inherently distinctive K OF C mark and add only a Council number, Agent surname, and/or other non-distinctive matter, such as "agency," "agent" or "council." Furthering confusion, almost all of this non-distinctive matter has a direct relationship to the Order and its products and services.

91.     The first twenty-one of the domain names listed above have an obvious connection with a specific Council or Agent. All but one of these domain names resolves to the corresponding Council or Agent website on <KOFCKnights.org> where the respective Council or Agent uses the Marks for Ordinary Fraternal Use and/or promotion of the Order's financial products and services.

92.     But the Councils and Agents do not own these domain names. UKnight does. Thus, UKnight's registration and use of these domain names is unauthorized and deprives the Order of the right to control how its trademarks are used.

93.     The remaining thirteen domain names – numbered 22 through 33 above plus <KOFCKnights.org> – have no connection to a specific Council or Agent.

94.     Upon information and belief, these thirteen domain names were registered by UKnight solely to trade off and capitalize on the Order's goodwill in the Marks by creating confusion in the marketplace.

95.     Upon information and belief, UKnight is the registrant, or has control over, or is using, or has used, or is trafficking, or has trafficked in, numerous other domain names that include or are confusingly similar to one or more of the Marks. The Order has not yet identified these other domain names, in part because UKnight may have utilized a proxy service to shield its identity as the registrant of these domain names.

**IV.**   **Illegally Recorded Telephone Conversations**

96.    Between 2011 and 2016, Leonard Labriola and/or Terry Clark, as agents of LiST Interactive, Ltd., made surreptitious audio recordings of their oral private telephonic communications with employees and agents of the Order (the "Recorded Persons").

97.    Leonard Labriola and/or Terry Clark made these surreptitious audio recordings using a digital recording device that saved the recordings in .MP3, .WAV, or .WMA format.

98.    At the time the communications were surreptitiously recorded, the Recorded Persons were located in Connecticut, and Leonard Labriola and/or Terry Clark knew the Recorded Persons were located in Connecticut. Leonard Labriola and/or Terry Clark contacted, or were contacted by, the Recorded Persons at Connecticut-based phone numbers with Connecticut area codes.

99.    Neither the Order nor any of the Recorded Persons was aware that their communications with Leonard Labriola and Terry Clark were being recorded surreptitiously.

100.    At no time before, during, or after these communications did the Order or the Recorded Persons consent to the surreptitious recordings or to the use of any recording device(s). Neither Leonard Labriola nor Terry Clark ever provided any verbal notification to the Order or the Recorded Persons that a recording device was secretly being used. Use of the recording device was not accompanied by any automatic tone warning device.

101.    Only through this litigation did the Order learn of these surreptitious audio recordings.

102.    Through this litigation, Plaintiffs have provided the Order with digital copies of certain of these audio recordings. Upon information and belief, additional audio recordings

relevant to the issues in this litigation exist or once existed, and Leonard Labriola and/or Terry Clark are or were in possession, custody, or control of such recordings.

103.    By secretly recording oral private telephonic communications, Leonard Labriola and Terry Clark knowingly and intentionally invaded the privacy of the Order and the Recorded Persons. These invasions of privacy occurred in Connecticut, where the Order and the Recorded Persons reside and were located at the time of the communications.

104.    Under Connecticut law, the making of these audio recordings was illegal.

105.    The State of Connecticut has a strong interest in protecting the privacy of its citizens and affording them a legal remedy when their privacy has been wrongfully and unlawfully invaded.

106.    By secretly recording telephonic conversations with the Recorded Persons, Leonard Labriola and Terry Clark knew or should have known that the making and use of these recordings would affect Connecticut residents.

**First Claim for Relief**
***(Trademark Infringement Pursuant to 15 U.S.C. § 1114***
***Against All Counterclaim Defendants)***

107.    The Order incorporates all allegations of this Counterclaim as if fully set forth herein.

108.    With the exception of the K OF C word mark, the Marks were federally registered by the Order long prior to UKnight's existence and prior to UKnight's first use of the Marks to promote its goods or services.

109.    Regarding the K OF C word mark, the designation K OF C as used by UKnight – both within and apart from its claimed service mark KofCKnights.org – is confusingly similar to the Emblem, which was registered two decades prior to UKnight's use of the K OF C mark.

110.    The Order's registrations for the Marks are evidence of the validity of the Marks and of the Order's ownership and exclusive rights to use the Marks in commerce.

111.    UKnight's use of the Marks is not authorized by the Order.

112.    UKnight's use of the Marks, including modifications thereof and confusingly similar variations, in interstate commerce without the authorization or consent of the Order constitutes trademark infringement in violation of 15 U.S.C. § 1114(1) in that such use is likely to cause the consuming public to be confused, mistaken, or deceived as to the source of UKnight's goods and services, or as to the existence or extent of an association, affiliation or connection between UKnight and the Order.

113.    The Order has suffered damage by reasons of the infringing activities described herein, and it will suffer irreparable harm unless the continued use of the Marks in commerce by UKnight is permanently enjoined.

114.    Upon information and belief, UKnight engaged in the conduct set forth herein with an intent to infringe, or at a minimum with a willful disregard for, the Order's rights in the Marks so as to justify an award of exemplary damages and attorneys' fees under 15 U.S.C. § 1117(a).

### Second Claim for Relief
### (*False Designation of Origin Pursuant to 15 U.S.C. § 1125(a) Against All Counterclaim Defendants*)

115.    The Order incorporates all allegations of this Counterclaim as if fully set forth herein.

116.    By virtue of more than 130 years of use and promotion of the Marks, the Order had established valuable goodwill in the Marks well prior to UKnight's use of the Marks.

117.    Without authorization from the Order, UKnight uses designations identical to the Marks. There is no question that the designations utilized by UKnight are confusingly similar to the Marks – indeed, the designations *are* the Marks.

118.    UKnight also falsely claims that UKnight is "THE COMPREHENSIVE WEB SOLUTION FOR THE KNIGHTS OF COLUMBUS" and that UKnight's use of the Marks is "with permission" from the Order (the "False Claims").

119.    UKnight's continued use of the Marks and publication of the False Claims is likely to cause confusion, deception, or mistake as to whether UKnight is affiliated, connected, or associated with the Order, or as to the origin, sponsorship or approval of UKnight's goods, services, or commercial activities by the Order.

120.    The Order has been damaged by reason of the infringing activities outlined in this Second Claim for Relief, and it will suffer irreparable harm unless UKnight's use of the Marks in commerce and publication of the False Claims are permanently enjoined.

121.    Upon information and belief, UKnight engaged in the conduct set forth herein with the intent to cause confusion, or at a minimum with willful disregard for the Order's rights, so as to justify an award of exemplary damages and attorneys' fees under 15 U.S.C. § 1117(a).

<u>**Third Claim for Relief**</u>
(***Dilution Pursuant to 15 U.S.C. § 1125(c) Against All Counterclaim Defendants***)

122.    The Order incorporates all allegations of this Counterclaim as if fully set forth herein.

123.    The KNIGHTS OF COLUMBUS and K OF C marks have a high degree of inherent and acquired distinctiveness, and have been used for more than 135 years throughout the United States.

124.    As the Order's house marks, the KNIGHTS OF COLUMBUS and K OF C marks have been the subject of significant national and local press coverage dating back to the late 1800s.

125.    Under the KNIGHTS OF COLUMBUS and K OF C marks, the Order has a highly visible and longstanding presence in communities large and small across the United States due to its millions of hours of annual charitable service.

126.    The KNIGHTS OF COLUMBUS and K OF C marks are widely recognized by the general consuming public as designations of source for the Order's products and services. Thus, the marks are famous.

127.    UKnight uses the identical marks KNIGHTS OF COLUMBUS and K OF C to market UKnight's goods and services.

128.    The Order together with its licensees is engaged in substantially exclusive use of the KNIGHTS OF COLUMBUS and K OF C marks.

129.    By its use of the KNIGHTS OF COLUMBUS and K OF C marks, UKnight intended to create an association with the marks.

130.    UKnight's use of the famous KNIGHTS OF COLUMBUS and K OF C marks impairs the distinctiveness of the marks.

131.    The Order has been damaged by reason of the dilutive activities described herein, and it will suffer irreparable harm unless the continued use of the KNIGHTS OF COLUMBUS and K OF C marks in commerce by UKnight is permanently enjoined.

132.    Upon information and belief, UKnight engaged in the conduct set forth herein with intent to create an association with the KNIGHTS OF COLUMBUS and K OF C marks, or

at a minimum with willful disregard for the Order's rights, so as to justify an award of exemplary damages and attorneys' fees under 15 U.S.C. § 1117(a).

**Fourth Claim for Relief**

(***Cybersquatting Pursuant to 15 U.S.C. § 1125(d) Against All Counterclaim Defendants***)

133. The Order incorporates all allegations of this Counterclaim as if fully set forth herein.

134. Through more than 125 years of widespread, continuous, and exclusive use of the K OF C mark throughout the United States, the Order's exclusive and nationwide common law rights in the K OF C mark were established long prior to UKnight's registration of the Domain Names.

135. The K OF C mark was distinctive at the times of registration for the Domain Names, as evidenced by registration of the K OF C mark on the Principal Register of the U.S. Patent and Trademark Office and registration of the Emblem on the Principal Register without a disclaimer of "K OF C."

136. The Domain Names are confusingly similar to the K OF C mark.

137. UKnight had knowledge of the Order's rights in the K OF C mark prior to registration of the Domain Names.

138. UKnight has no trademark or other intellectual property rights in the Domain Names.

139. Depending on the specific domain name, UKnight's bad faith intent in registration and use of the Domain Names is diversion of consumers from the Order and its Councils and Agents or profit from exploiting the value of the Marks.

140. UKnight utilizes a proxy service to hide its identity as the registrant of its primary domain name <KOFCKnights.org>.

141.    UKnight has registered at least thirty-four domain names containing the K OF C mark with full knowledge of the Order's rights in the mark.

142.    UKnight's bad faith intent to profit from the K OF C mark is obvious.

143.    The Order has been damaged by reason of the cyberpiracy and infringing activities described herein, and it will suffer irreparable harm unless the Domain Names are transferred to the Order and UKnight is permanently enjoined from the registration of domain names containing or confusingly similar to the Marks.

144.    Upon information and belief, UKnight engaged in the conduct set forth herein with the intent to cause confusion with the Order's K OF C mark or, at a minimum, with a willful disregard for the Order's rights in the mark, so as to justify an award of attorneys' fees under 15 U.S.C. § 1117(a).

**Fifth Claim for Relief**
(***Common Law Trademark Infringement Against All Counterclaim Defendants***)

145.    The Order incorporates all allegations of this Counterclaim as if fully set forth herein.

146.    By virtue of its long-term use and promotion of the Marks, the Order established valuable goodwill in the Marks throughout the United States, including throughout the State of Colorado, well-prior to the adoption and use of the Marks by UKnight.

147.    UKnight's adoption, registration and use of the Marks in connection with its goods and services is likely to deceive, confuse, and mislead consumers and the general public into believing that UKnight and its goods and services emanate from, are authorized by, and/or are in some manner endorsed by the Order.

148.    The Order has been damaged by reason of the infringing activities described herein, and it will suffer irreparable harm unless the continued use of the Marks in commerce by UKnight is permanently enjoined.

149.    Upon information and belief, UKnight engaged in the conduct set forth herein with a willful, wanton, or reckless disregard for the rights of the Order, so as to justify an award of exemplary damages.

### Sixth Claim for Relief
*(Violation of Conn. Gen. Stat. § 52-570d*
*Against Leonard Labriola, Terry Clark, and LiST Interactive, Ltd.)*

150.    The Order incorporates all allegations of this Counterclaim as if fully set forth herein.

151.    Conn. Gen. Stat. § 52-570d makes it unlawful to use any instrument, device, or equipment to record an oral private telephonic communication unless all parties to the communication consent in writing or at the beginning of the recording, or are notified verbally or via an automatic tone warning device.

152.    Leonard Labriola and Terry Clark, as agents for LiST Interactive, Ltd, knowingly and intentionally violated Conn. Gen. Stat. § 52-570d by secretly making numerous audio recordings of communications with the Recorded Persons without consent or notification.

153.    The making of the secret recordings invaded the privacy of the Order and the Recorded Persons.

154.    The Order and the Recorded Persons have been aggrieved by the violations of Conn. Gen. Stat. § 52-570d described herein.

155.    The Order and the Recorded Persons have suffered damages as a result of the violations of Conn. Gen. Stat. § 52-570d described herein.

**Seventh Claim for Relief**
(*Civil Conspiracy Against All Counterclaim Defendants*)

156.    The Order incorporates all allegations of this Counterclaim as if fully set forth herein.

157.    LiST Interactive, Ltd., Leonard Labriola, WebsInc.com, Inc., Steve Michlik, Jonathan Michlik, and Terry Clark are six persons that joined together to operate a web development enterprise targeted at the Councils and Agents of the Order.

158.    The object of LiST Interactive, Ltd., Leonard Labriola, WebsInc.com, Inc., Steve Michlik, Jonathan Michlik and Terry Clark was business success by virtue of aligning their business enterprise with the Order.

159.    Thus, instead of developing their own brand and identity, LiST Interactive, Ltd., Leonard Labriola, WebsInc.com, Inc., Steve Michlik, Jonathan Michlik, and Terry Clark determined to brand their web development goods and services using the Marks.

160.    LiST Interactive, Ltd., Leonard Labriola, WebsInc.com, Inc., Steve Michlik, Jonathan Michlik and Terry Clark's infringing activities described herein, including all activities heretofore described, are unlawful acts.

161.    LiST Interactive, Ltd., Leonard Labriola, WebsInc.com, Inc., Steve Michlik, Jonathan Michlik, and Terry Clark conspired to infringe and dilute the trademark rights of the Order for their own personal and collective business gain.

162.    The Order has been damaged by reason of the unlawful acts described herein.

163.    Upon information and belief, UKnight's conduct as outlined herein has been engaged in with a willful, wanton, or reckless disregard for the rights of the Order, so as to justify an award of exemplary damages.

**Prayer for Relief**

Defendant / Counterclaim Plaintiff Knights of Columbus respectfully prays for the following relief:

A.  A permanent injunction prohibiting each of LiST Interactive, Ltd., Leonard Labriola, WebsInc.com, Inc., Steve Michlik, Jonathan Michlik, and Terry Clark from using any modifications of the Marks;

B.  A permanent injunction prohibiting each of the Counterclaim Defendants from using the Marks or any other name or mark likely to be confused with the Marks in commerce, including on the Shadow Sites and in any other manner that promotes the business interests of any of Counterclaim Defendants;

C.  A permanent injunction prohibiting each of Counterclaim Defendants from using the Marks or any other name or mark that is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of any of Counterclaim Defendants with the Order, or as to the origin, sponsorship, or approval by the Order of any of Counterclaim Defendants' goods, services, and/or commercial activities;

D.  A permanent injunction prohibiting each of the Counterclaim Defendants from publishing the False Claims or any other false or misleading description or misrepresentation of fact that is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of any of Counterclaim Defendants with the Order, or as to the origin, sponsorship, or approval by the Order of any of Counterclaim Defendants' goods, services, and/or commercial activities;

E.      A permanent injunction prohibiting each of Counterclaim Defendants from using the KNIGHTS OF COLUMBUS and K OF C marks in any manner that impairs the distinctiveness of the marks;

F.      A permanent injunction prohibiting each of the Counterclaim Defendants from registering, trafficking in, or using a domain name that contains or is confusingly similar to any one or more of the Marks;

G.      An Order directing transfer of the Domain Names to the Councils and Agents to which the Domain Names refer or, if none, to the Order; or, in the alternative, an Order directing transfer of the Domain Names to the Order to allow the Order to transfer the Domain Names to the Councils and Agents to which the Domain Names refer;

H.      An award of compensatory damages under each and every one of the Order's First, Second, Third, Fourth, Fifth, Sixth, and Seventh Claims for Relief;

I.      A statutory damages award of $3,400,000 under the Order's Fourth Claim for Relief, pursuant to 15 U.S.C. § 1117(d);

J.      An accounting and disgorgement of profits derived by Counterclaim Defendants through use of the Marks in commerce;

K.      An award of exemplary damages pursuant to 15 U.S.C. § 1117(a) under the Order's First, Second, and Third Claims for Relief;

L.      An award of exemplary damages;

M.      An award of nominal damages under the Order's Sixth Claim for Relief;

N.      An award of attorneys' fees pursuant to 15 U.S.C. § 1117(a) under the Order's First, Second, Third, and Fourth Claims for Relief;

O.     An award of attorneys' fees pursuant to Conn. Gen. Stat. § 52-570d(c) under the

       Order's Sixth Claim for Relief;

P.     An award of taxable costs;

Q.     An order directing that Counterclaim Defendants are jointly and severally liable

       under the Order's Seventh Claim for Relief for the compensatory damages,

       statutory damages, exemplary damages, disgorgement of profits, attorneys' fees,

       and taxable costs awarded to the Order;

R.     An order regarding permissible use and disclosure of the illegal audio recordings

       by the parties' and their counsel in the context of these proceedings; and

S.     Such other relief as this Court deems appropriate.


## DEMAND FOR JURY TRIAL

Defendant hereby demands a trial by jury on all issues so triable.

DATED: January 11, 2018.

                          Respectfully submitted,


                          *s/ Edward A. Gleason*
                          Edward A. Gleason
                          LEWIS ROCA ROTHGERBER CHRISTIE LLP
                          90 South Cascade Avenue, Suite 1100
                          Colorado Springs, CO 80903
                          Telephone: 719.386.3000
                          Facsimile: 719.386.3070
                          Email: egleason@lrrc.com

                          *Attorneys for Defendant Knights of Columbus*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of January 2018, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF System, which will send notification to the following:

Jeffrey S. Vail, Esq.
VAIL LAW LLC
5299 DTC Blvd., Suite 1101
Greenwood Village, CO  80111


*s/ Luanne Sutton*
Luanne Sutton