**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-00210-RBJ

LIST INTERACTIVE, LTD. D/B/A UKNIGHT INTERACTIVE,

    Plaintiff,

v.

KNIGHTS OF COLUMBUS,
DAVID J. KAUTTER, IN HIS OFFICIAL CAPACITY AS (ACTING) COMMISSIONER OF THE INTERNAL REVENUE SERVICE,

    Defendants.

KNIGHTS OF COLUMBUS,

    Counterclaim Plaintiff,

v.

LIST INTERACTIVE, LTD. D/B/A UKNIGHT INTERACTIVE,
LEONARD S. LABRIOLA, WEBSINC.COM, INC., STEPHEN S. MICHLIK,
JONATHAN S. MICHLIK, AND TERRY A. CLARK,

    Counterclaim Defendants.

---

**DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND PERMANENT INJUNCTION ON COUNTERCLAIM**

---

    Defendant/Counter-Plaintiff Knights of Columbus ("K of C") moves for summary judgment against all counter-defendants on K of C's counterclaims for trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), cybersquatting under 15 U.S.C. § 1125(d), and common law trademark infringement. K of C requests a permanent injunction prohibiting further infringement by the counter-defendants and requiring them to transfer all the infringing domain names, particularly the highly web-visible infringing domain of KOFCKnights.org, to K of C. Moreover, UKnight's continued willful use of K of C's intellectual

1

property, especially after an admonition by the Court to the lead counter-defendant in February 2018, implicates statutory damages under 15 U.S.C. § 1117(d) and attorney fees and costs under 15 U.S.C. § 1117(a). If the Court concludes that these requested remedies are warranted to further the ends of justice, the issue should be addressed at a later time, subject to a separate hearing and briefing schedule after the Court rules on the present motion.

I.      **Statement of Undisputed Facts**

The counter-defendants have never answered the Counterclaim [ECF No. 101]. After the Court, on March 20, 2018, denied their motion to dismiss the Counterclaim [ECF No. 118], they had until April 3, 2018 to answer it. They failed to do so, and their answer deadline never was stayed or extended. They have thus admitted the factual allegations of the Counterclaim other than those relating to the amount of damages. *See* Fed. R. Civ. P. 8(b)(6). In any case, there can be no genuine dispute about the facts that follow.

Since as early as 1884, K of C has continuously used the word marks KNIGHTS OF COLUMBUS and K OF C and a design mark consisting of its official emblem depicted in Figure 1 ("Emblem") (collectively, the "Marks") to identify itself and its insurance and charitable services. 

*Figure 1*

[Counterclaim ¶ 41.] The Marks are inherently distinctive and widely recognized by the general consuming public as designations of source for K of C and its services. [*Id.* ¶¶ 41-43.] In addition to extensive common law rights, K of C owns federal trademark registrations for the word marks KNIGHTS OF COLUMBUS® and K OF C® and for the Emblem. [*Id.* ¶¶ 35-38.] K of C's official website at KOFC.org, where the Marks are used extensively, receives thousands of visitors per day. [*Id.* ¶¶ 30-31.]

Having been in continuous use for at least five years since registration, each of the Marks has become incontestable under 15 U.S.C. § 1065. [*Id.* ¶ 40.] Accordingly, registration of the Marks serves as "conclusive evidence" of the Marks' validity, K of C's ownership, and K of C's exclusive right to use the Marks in commerce. *See* 15 U.S.C. § 1115(b).

K of C expressly forbids use of its Marks without permission. Members, including insurance agents, may use the Marks only to promote K of C's financial products and services, and not for any other personal or financial reason. [Counterclaim ¶¶ 50-52.] Subordinate units (*i.e.*, councils and assemblies) may use the Marks "to promote charitable, fundraising, or civic activity," but never "to promote any private business interest, personal gain, or political cause." [*Id.* ¶ 53-55.] Councils and agents may retain third-party vendors to create products that identify the council, agent, or K of C itself. For example, a council could authorize a vendor to print flyers bearing the Emblem to promote a council-sponsored fundraiser. The key is that the Marks be used as a source identifier for K of C, not for the vendor. [*See id.* ¶ 56.]

Despite two cease-and-desist letters from K of C, the Counterclaim, and this Court's warning,[1] the counter-defendants continue to use the Marks to promote their website business. [*See generally id.* ¶¶ 57-95.] Each counter-defendant is responsible for these infringing activities. [*Id.* ¶¶ 12-14.]

---

[1] Counter-defendant Leonard Labriola represented to the Court at a hearing on February 6, 2018 that UKnight had ceased using the Marks "[w]ithin one hour of being told to." [Exhibit A, Feb. 6, 2018 Hr'g Tr. at 76:20.] In fact, UKnight had not then and has not now ceased using the Marks. The Court warned Mr. Labriola at that hearing: "If he didn't take them down, he's in trouble, and he ought to know that. He can never say he wasn't warned today. If he didn't take them down, he's in trouble." [*Id.* at 78:1-4.]

- UKnight's primary website still is located at KOFCKnights.org. Counter-defendant WebsInc.com, Inc. ("WebsInc"), a company owned by counter-defendant Stephen Michlik, is the registered owner of this domain. [*Id.* ¶ 59.]

- UKnight's marketing presentations on KOFCKnights.org still feature the Marks, particularly the Emblem, on page after page, and falsely refer to UKnight as "The Comprehensive Web Solution for All Knights of Columbus Councils." [Exhibit B.][2]

- UKnight's council websites feature a "UKnight Market Center," where third-party businesses pay a fee to UKnight to advertise on the site. The Market Center appears beneath a page header featuring the Emblem and the KNIGHTS OF COLUMBUS® mark. [*E.g.*, Exhibit C.]

- UKnight's agent sites use the KNIGHTS OF COLUMBUS® mark next to the phrase "Protecting Your Family for Life," which is a Colorado state trademark that UKnight registered for "life insurance" and "financial products" even though UKnight does not sell these. [*E.g.*, Exhibit D.] The phrase is clearly a play on YOUR SHIELD FOR LIFE®, another K of C mark, and an attempt to blur the lines between UKnight and K of C.

- In addition to KOFCKnights.org, WebsInc and UKnight still own 13 of the 34 infringing domain names identified in Counterclaim ¶¶ 86-88.[3]

---

[2] Ex. B is an excerpt of http://kofcknights.org/Training/UKnightCouncilBenefitsFeatures.pdf. See also http://www.kofcknights.org/Training/UKnightDDFeaturesBenefits.pdf and http://www.kofcknights.org/MCMsite/UKnightMarketCenterGuide.pdf.

[3] WebsInc still owns KOFCKnights.org, KOFCassembly2266.org, KOFC11937.org, KOFC13408.org, and KOFC8895.org; and UKnight still owns KOFCmarloweagency.com, KOFCsticeagency.com, KOFChuardagency.com, KOFCtnagency.com, KOFC13174.org, rocKOFC.com, KOFC6966.org, KOFC5237.org, and KOFC13221.org ("Infringing Domains").

## II. K of C Is Entitled to Summary Judgment on Its Counterclaims for Trademark Infringement, False Designation of Origin, and Cybersquatting.

### A. Trademark Infringement and False Designation of Origin (First, Second, and Fifth Counterclaims)

Trademark infringement under § 32 of the Lanham Act and false designation of origin under § 43(a) of the Lanham Act "have virtually identical elements and are properly addressed together." *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1257 (D. Colo. 2014) (citation omitted). To prevail on either claim, K of C must show "(1) that the plaintiff has a protectable interest in the mark, (2) that the defendant has used an identical or similar mark in commerce, and (3) that the defendant's use is likely to confuse consumers." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013). Common law trademark infringement has the same three elements. *See Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004).

The first two prongs are simple to resolve. Plainly, K of C has a protectable interest in the Marks. K of C has used its inherently distinctive Marks since 1884 to identify its goods and services. Since the Marks are incontestable, they are also presumed to be distinctive, and K of C's right to use them is exclusive. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 924 (10th Cir. 1986). And UKnight is using the identical Marks to promote its website business, not only without K of C's authorization but in the face of this Court's instruction to desist.

The third prong is whether UKnight's use "is likely to cause consumer confusion." *1-800 Contacts*, 722 F.3d at 1238. "The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204-05 (2d Cir. 1979). Likelihood of confusion is "amenable to summary judgment in appropriate circumstances." *Hornady Mfg. Co.*

*v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014); *see Steak n Shake Enters., Inc. v. Globex Co.*, 110 F. Supp. 3d 1057, 1077 (D. Colo. 2015) (summary judgment and permanent injunction for plaintiff on trademark infringement claims against former franchisee), *aff'd*, 659 F. App'x 506 (10th Cir. 2016); 6 *McCarthy on Trademarks and Unfair Competition* § 32:121 (5th ed.).

In the Tenth Circuit, likelihood of confusion is evaluated under the six *King of the Mountain* factors. *See 1-800 Contacts*, 722 F.3d at 1239 (citing *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1090 (10th Cir. 1999)). These factors warrant summary judgment for K of C because UKnight uses the Marks to false imply sponsorship by or affiliation with K of C.

Factor 1: Similarity between marks: "[T]he similarity of the marks factor constitutes the heart of [the] analysis," *King of the Mountain*, 185 F.3d at 1090, and UKnight is using identical marks to promote its own services. *See Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1240 (10th Cir. 2006) (where trademarked terms were identical, similarity factor "weighed heavily in favor of Plaintiffs").

Factor 2: UKnight's intent in adopting the Marks: Using K of C-formative domain names like KOFCKnights.org, branding itself "The Comprehensive Web Solution for All Knights of Columbus Councils," and using the Marks in connection with the UKnight Market Centers are all a deliberate effort by UKnight to profit from a perceived association with K of C. *See Beer Nuts*, 805 F.2d at 927-28 (inferring intent from similarity of marks). "Proof that a defendant chose a mark with the intent of copying the plaintiff's mark may, *standing alone*, justify an inference of likelihood of confusion." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 973 (10th Cir. 2002) (emphasis added). And UKnight's continued use of the Marks after receiving two cease-and-desist

letters, the Counterclaim, and this Court's clear warning, "by its very nature, constitutes trademark infringement." *Steak n Shake*, 110 F. Supp. 3d at 1077.

Factor 3: Actual confusion: "Actual confusion in the marketplace is often considered the best evidence of likelihood of confusion." *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1534 (10th Cir. 1994). There has been actual confusion among councils, members, and donors about UKnight's affiliation (or lack thereof) with K of C. For example:

- In 2013 UKnight created a "Shadow Site" (a blank website template at KOFCKnights.org) for the Texas State Council of the Knights of Columbus, even though that council maintains a separate website and never retained UKnight. A council officer instructed UKnight to delete the Shadow Site and noted, "It is already causing confusion as the Texas State Council offices have received calls regarding the unauthorized website from members and non-members of [K of C]." [Exhibit E.]

- In October 2014, a third-party donor seeking to donate to K of C erroneously contacted UKnight for donation instructions. [Exhibit F.]

- In February 2015, a local council officer contacted UKnight to complain about an unauthorized Shadow Site for that council and also wrote, "I would expect you'd be a .com if it's a pay for service. The .org gives the impression that it's an approved offshoot from KofC.org . . . ." [Exhibit G.]

- In October 2015, UKnight sent a mass email to councils about managing their membership lists, including councils who had never signed up for UKnight's services. The email gave the impression of having originated with K of C, resulting in inquiries and complaints to the K of C home office in Connecticut. [Exhibit H.]

Factor 4: Manner of marketing: UKnight and K of C target the same set of consumers, namely those K of C members who, through their councils or as insurance agents, purchase UKnight's web services. [Second Am. Compl. ¶ 11 (UKnight was formed to "serve the specific needs of [K of C]"); *id.* ¶ 57 (K of C is UKnight's "exclusive focus").] "If similar marks are used on goods or services that are marketed to the same prospective purchasers, the likelihood of confusion is greater." *Vail Assocs., Inc. v. Vend-Tel-Co.*, 516 F.3d 853, 881 (10th Cir. 2008).

Factor 5: Consumer care: Although it may be relevant in confusion-of-source cases, "[t]his factor rarely reduces the risk of sponsorship confusion" and so has little relevance in a confusion-of-sponsorship case like this one. *King of the Mountain*, 185 F.3d at 1092. On balance, therefore, this factor is neutral.

Factor 6: Strength of the Marks: "The stronger a trademark, the more likely that encroachment upon it will lead to sponsorship confusion." *King of the Mountain*, 185 F.3d at 1093 (quotation omitted). Courts evaluate both conceptual strength, *i.e.*, the distinctiveness of the mark, and commercial strength, *i.e.*, "the marketplace recognition value of the mark." *Id.* (quoting McCarthy, *supra*, § 11:83) (internal quotation marks omitted). K of C's Marks are strong on both accounts: K of C is the only person with federal registrations for KNIGHTS OF COLUMBUS® and K OF C®; there are no similar marks; and the Marks are widely known to identify K of C. [Counterclaim ¶ 126.]

In sum, five of the *King of the Mountain* factors strongly favor K of C, and one is neutral. No factor favors the counter-defendants. Based on the undisputed facts, K of C is entitled to summary judgment against the counter-defendants on its first, second, and fifth counterclaims.

### B. Cybersquatting (Fourth Counterclaim)

The Anti-Cybersquatting Protection Act ("ACPA"), 15 U.S.C. § 1125(d), forbids cybersquatting, "the bad faith, abusive registration and use of the distinctive trademarks of others as Internet domain names, with the intent to profit from the goodwill associated with those trademarks." *Am. Acad. of Husband-Coached Childbirth v. Thomas*, 2010 WL 5184779, at *4 (D. Colo. 2010) (quotation omitted). For K of C to prevail, it must show that (1) the K OF C® mark was distinctive at the time the Infringing Domains were registered, (2) the Infringing Domains are identical or confusingly similar to this mark, and (3) WebsInc and UKnight used or registered the domain names with a bad faith intent to profit. *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1057 (10th Cir. 2008).

The first two elements are clearly met. K OF C® is inherently distinctive, and the Infringing Domains are confusingly similar. These domains take the word "KOFC" and simply add other words indicative of the Knights of Columbus, such as "Knights," a Council number, or an Agent surname. As this Court has observed, "[a] defendant in a trademark infringement or unfair competition case cannot prevail by simply adding a word to the one it shares with the plaintiff." *CrossFit, Inc. v. 5280 Realty, Inc.*, 157 F. Supp. 3d 954, 958 (D. Colo. 2016) (domain name 5280crossfit.com was confusingly similar to plaintiff's CROSSFIT mark); *see also Omega S.A. v. Omega Eng'g, Inc.*, 228 F. Supp. 2d 112, 127 (D. Conn. 2002) (domain names omegatime.com and omegawatch.com were confusingly similar to watch company's OMEGA mark); 5 *McCarthy on Trademarks and Unfair Competition* § 25A:51 (5th ed.) (addition of generic or descriptive matter to mark in domain name "will usually not prevent a finding of confusing similarity").

On the third prong, "[t]he ACPA lists nine nonexclusive factors to assist the court in determining whether the use of a trademark involves a bad faith intent to profit." *CrossFit*, 157 F. Supp. 3d at 959 (citing 15 U.S.C. § 1125(d)(1)(B)(i)); *see also Morrison & Foerster, LLP v. Wick*, 94 F. Supp. 2d 1125, 1131 (D. Colo. 2000). While statutory factors (VI) and (VII) may favor the counter-defendants – they have not offered to sell the Infringing Domains to K of C and did not supply false contact information to domain registrars – the remaining seven factors overwhelmingly favor K of C:

(I) The counter-defendants have no trademark or other intellectual property rights to K OF C® or to any other word used in the Infringing Domains;

(II) Rather than use their own legal or trade names – UKnight, LiST, or WebsInc – the counter-defendants registered domain names that use "KOFC" and "Knights";

(III) The counter-defendants had no prior use of the Infringing Domains in connection with the bona fide offering of web services;

(IV) The counter-defendants are using the infringing domains and the content of the sites to promote their website business, not for a noncommercial or fair use such as "comparative advertising, comment, criticism, parody, [or] news reporting," *CrossFit*, 157 F. Supp. 3d at 960 (quotation omitted);

(V) The extensive use of the Marks on the sites associated with the Infringing Domains creates a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site by K of C;

(VIII) In addition to KOFCKnights.org, WebsInc and UKnight continue to own at least 13 Infringing Domains; and

(IX) K OF C® is inherently distinctive and uniquely identifies the Knights of Columbus, which is why the counter-defendants chose it for the Infringing Domains.

*See* 15 U.S.C. § 1125(d)(1)(B)(i).

Because the statutory factors favor K of C and the uncontested facts plainly demonstrate the counter-defendants' bad faith in registering the Infringing Domains, K of C is entitled to summary judgment on its ACPA claim. *Omega S.A.*, 228 F. Supp. 2d at 119 (citing cases granting summary judgment on behalf of trademark owners against cybersquatters); *see, e.g.*, *Audi AG v. D'Amato*, 381 F. Supp. 2d 644, 667 (E.D. Mich. 2005) (granting summary judgment for trademark owner on ACPA claim where "six of the nine factors demonstrating bad faith [were] present"), *aff'd*, 469 F.3d 534 (6th Cir. 2006).

### III. This Court Should Grant K of C a Permanent Injunction Prohibiting Continued Infringement by UKnight and Requiring Transfer of the Infringing Domains.

"A permanent injunction is the usual and normal remedy once trademark infringement has been found in a final judgment." 5 *McCarthy on Trademarks and Unfair Competition* § 30:1 (5th ed.); *see* 15 U.S.C. § 1116(a). Also, "[t]he ACPA permits a court to 'order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark.'" *Morrison & Foerster*, 94 F. Supp. 2d at 1134 (quoting 15 U.S.C. § 1125(d)(1)(C)).

K of C meets the fourfold test for a permanent injunction. *See Steak n Shake*, 110 F. Supp. 3d at 1077-78. First, K of C has established actual success on the merits of its counterclaims. Second, because the counter-defendants are using the identical Marks without authorization and in light of the actual confusion this has caused, irreparable harm to K of C's Marks, goodwill, reputation, and business has occurred and will occur if the counter-defendants are not permanently enjoined from using the Marks and Infringing Domains. [*See* Exs. E-H; Counterclaim ¶¶ 113, 120,

143, 148.] Third, the threatened injury to K of C far outweighs any harm to the counter-defendants, who have no right to use the Marks or the Infringing Domains to promote their website business. Finally, the issuance of a permanent injunction will not adversely affect the public interest, and instead will further the public interest by ending the counter-defendants' unauthorized and confusing use of the Marks and Infringing Domains. *See id.* at 1078; *Morrison & Foerster*, 94 F. Supp. 2d at 1134.

K of C requests the following relief: (1) an order permanently enjoining the counter-defendants, and any person or entity associated with them, from using the Marks and any words or symbols confusingly similar to the Marks in commerce for any purpose not specifically authorized in writing by K of C; and from registering, owning, or using any domain name that includes the words "KNIGHTSOFCOLUMBUS", "KOFC", or any confusingly similar word or phrase; and (2) an order directing the counter-defendants to forfeit their interests in the Infringing Domains and transfer, at their own cost, the Infringing Domains to K of C, and permanently enjoining the counter-defendants, and any person or entity associated with them, from taking any action to prevent or hinder K of C from obtaining these domain names. *Compare* Permanent Injunction entered in *Steak n Shake*, No. 13-cv-01751-RM-CBS, ECF No. 106 (D. Colo. June 23, 2015); *Morrison & Foerster*, 94 F. Supp. 2d at 1134.

**IV.    Conclusion**

K of C asks the Court to enter summary judgment against the counter-defendants on K of C's counterclaims for trademark infringement under 15 U.S.C. § 1114, false designation of origin

under 15 U.S.C. § 1125(a), cybersquatting under 15 U.S.C. § 1125(d), and common law trademark infringement; and to enter the permanent injunction described in Part III above.

K of C also requests an award of statutory damages under 15 U.S.C. § 1117(d) for the counter-defendants' violations of the ACPA, and of attorney fees and costs under 15 U.S.C. § 1117(a) for UKnight's "deliberate" and "willful" infringement of the Marks, to the extent the Court concludes that such remedies further the ends of justice. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1232 (10th Cir. 2000). K of C asks the Court to schedule a separate hearing and set a briefing schedule to resolve the damages, fees, and costs issues. *See Steak n Shake*, 110 F. Supp. 3d at 1077 (similar procedure).

Respectfully submitted on January 10, 2019.

| | |
|---|---|
| *s/ Ian Speir* | *s/ Edward A. Gleason* |
| L. Martin Nussbaum | Edward A. Gleason |
| Ian Speir | Joy T. Allen Woller |
| NUSSBAUM SPEIR PLLC | Hermine Kallman |
| 90 S. Cascade Ave., Suite 400 | LEWIS ROCA ROTHGERBER CHRISTIE LLP |
| Colorado Springs, CO 80903 | 90 S. Cascade Ave., Suite 1100 |
| (719) 357-4447 | Colorado Springs, CO 80903 |
| Email: martin@nussbaumspeir.com, | (719) 386-3000 |
| ian@nussbaumspeir.com | Email: egleason@lrrc.com, jwoller@lrrc.com, hkallman@lrrc.com |

*Attorneys for Defendant / Counter-Plaintiff Knights of Columbus*

## CERTIFICATE OF SERVICE

On January 10, 2019, I filed this with the Clerk of the Court using the CM/ECF System, and emailed it to:

Mr. Leonard S. Labriola
leonard.labriola@uknight.org

Mr. Stephen S. Michlik
steve.michlik@gmail.com

Mr. Jonathan S. Michlik
jonathanmichlik44@gmail.com

Mr. Terry A. Clark
terry.clark@uknight.org

s/ <i>Ian Speir</i><br>Ian Speir